LOTTIE LAUER, Appellee, v. BEN BANNING, Appellant.

**Contracts:** PUBLIC POLICY: BREACH OF MARRIAGE PROMISE: DEFENSES. An agreement by which an unmarried woman, in consideration of wages to be paid her, waives all claim for damages growing out of any legal action, and that such consideration shall be accepted in complete settlement of all claims that may subsequently arise while in defendant's employ, that she will not accuse defendant of any impropriety towards her and that the same shall be evidence that any such accusations, if made, are false and fictitious, is one in which the state is interested and is against public policy, immoral and void; and is no defense to an action for breach of defendant's subsequent promise of marriage.

**Same:** INSTRUCTION. An instruction in an action for breach of a marriage agreement that such a contract was void and would not constitute a defense to plaintiff's action, but should be considered as bearing on her character as a witness and her chastity as a woman, is not open to the objection that it failed to authorize a consideration of the same as bearing on the question of a promise of marriage, or whether plaintiff was raped or seduced as claimed, for the jury was therein advised to consider the contract in determining the truth or falsity of her testimony in all particulars.

**Evidence:** PRIVILEGED COMMUNICATIONS: WAIVER. A party does not waive the statute relating to professional communications by evidence of such communications brought out wholly on cross-examination.

**Same:** INSTRUCTION. Ordinarily it will be presumed that testimony which a party fails to produce, if within his control, or the production of which he prevents, is adverse to him, but this rule does not obtain as to privileged communications.

**Breach of marriage promise:** EVIDENCE. Evidence tending to show that plaintiff in a breach of promise suit was forcibly defiled by defendant is admissible as a part of the history of the case, but not as bearing on the promise of marriage or the amount of damages.

**Seduction:** INSTRUCTIONS CONSTRUED. Seduction is the carnal knowledge of an unmarried female of previously chaste character, by

means of some false promise, artifice, flattery or deception, which must be established aside from the fact of intercourse. The instructions in this case when construed together correctly state the rule.

Same: DAMAGES. The fact of seduction may be considered in aggravation of damages in a suit for breach of promise.

Same. The pecuniary advantage to have been derived from the marriage may be considered on the question of damage for breach of the contract.

*Appeal from Polk District Court.*—Hon. JAMES A. HOWE, Judge.

THURSDAY, JUNE 8, 1911.

ACTION for breach of promise of marriage. Defendant filed a general denial and other defenses and pleas in mitigation, which so far as material will be noticed in the body of the opinion. Trial to a jury. Verdict and judgment for plaintiff and defendant appeals.—*Affirmed.*

*Clark & Hutchinson* and *McHenry & Graham,* for appellant.

*Stipp & Perry, Parsons & Mills,* and *Franklin & Miller,* for appellee.

DEEMER, J.—This is the second time the case has been before us. The opinion on the first appeal will be found in 140 Iowa, 319. The issues were the same on the second trial as on the first, save that defendant set out the contract copied in the former opinion as a complete defense to plaintiff's action. The testimony is not exactly the same as on the former trial, plaintiff having modified some of her statements in order to prove the alleged seduction a little more clearly, and to show that the promise of marriage was after the making of the contract just referred to.

Practically each and all of the questions determined on the former appeal are reargued and some additional matters are presented in the briefs to some of which we shall refer during the course of the opinion.

I.   It is now claimed that the contract set out in the former opinion is a complete bar to plaintiff's action.   This question was not determined on the former appeal, and all we need say now is that a reading of this contract convinces us that it is so tainted with illegality that no court should hold it a bar to an action for breach of promise of marriage.   It is true of course that marriage under our law is a contract—a civil contract.   But it is *sui generis,* and is regarded in law as something more, particularly when consummated.   It is a contract in which the public—the state —has an interest, and when consummated creates a status which no other contract does.   The state has a peculiar interest in such contracts, and such agreements as are here relied upon, not only most seriously affect the purity of the marriage promise, but are subversive of good morals and clearly inimical to public policy.   The better rule is that one can not by contract relieve another from his subsequent negligence.   *Johnston v. Targo,* 184 N. Y. 379 (77 N. E. 388, 7 L. R. A. (N. S.) 557), and cases cited in notes.   If this be true, what should be said of such a contract as the one here involved?   No citation of authorities should be needed for so plain a proposition.   Assuming, however, that such a contract is valid it was no defense here for the reason that according to plaintiff's testimony this was superseded by a subsequent independent contract of marriage. True, defendant denied any promise of marriage at any time, and under the testimony and the instructions the jury must have found that a contract was made as testified to by plaintiff.

The court, on the last trial, gave the following instruction with reference to this contract:   "(10)   On this trial

I. CONTRACTS: public policy: breach of marriage promise: defenses.

there has been offered and introduced in evidence a certain

2. SAME: instruction. writing by and between the plaintiff and the defendant identified in the record as Exhibit 1. Though purporting to be a contract between the parties, you are instructed that such writing is not, in law, a contract because it is against public policy to permit individuals to make such a contract, and it is therefore void. For that reason it does not, as an agreement against liability, constitute a defense to plaintiff's cause of action, but may and should be considered by you as bearing upon the truthfulness of the plaintiff as a witness in this case, and upon her character both as a witness and as a pure and chaste woman." This instruction is in accord with the law announced on the former appeal. Counsel contend, however, that it was not broad enough; that it should also have been considered with reference to whether or not a contract for marriage was in fact entered into, and as to whether or not plaintiff was either raped or seduced as claimed. The instruction as given does permit the jury to consider the contract for these purposes, for it told the jury that it might consider the same in its bearing upon the truth or falsity of plaintiff's testimony in every particular. By her testimony the alleged seduction and rape were established, and she also testified as to the alleged promise of marriage. Under the instruction the jury had the right to consider this contract as determining whether or not any of these things testified to by plaintiff did in fact occur. Defendant asked no instructions with reference to this contract, and is in no position to complain of the one given. Moreover, the court did not limit the purposes for which the contract might be used save that he said it was void and could not be considered as a complete defense. The jury plainly had the right to use the contract for the purposes now suggested by appellant's counsel.

II. The record as to the testimony offered by defendant of plaintiff's former lawyer and of her physician is

much the same as on the former hearing, save that on the second trial plaintiff did not waive the statute by testifying on her examination in chief as to what her physician told her. There was no waiver by her. All that she said with reference to what she told her former lawyer and her physician or as to what either told her was brought out on her cross-examination and of course this did not constitute a waiver. See former opinion for authorities upon this proposition.

*3. EVIDENCE: privileged communications: waiver.*

The trial court gave this instruction which had reference to plaintiff's failure to introduce her physician, and to her objection to the testimony of her former lawyer and her physician: "(20) You are to try and determine this case according to the evidence produced and submitted to you in open court on the trial, and the law as given you by the court in these instructions, and upon nothing else. You will not indulge in any speculation or suppositions concerning what any witness or witnesses might have testified to had they been permitted to testify, when they were not, but you will consider the testimony as it is and only as it is in the record."

*4. SAME: instruction.*

This instruction was correct. If one must, upon penalty of having a presumption raised against him, introduce his lawyer or physician, the statutes prohibiting them from testifying are of no significance. Of course the ordinary rule is that if one does not produce testimony within his control, or prevents the use of such testimony, the presumption arises that such testimony, if produced, would be adverse to them. But this rule does not apply to privileged communications for reasons too obvious to mention.

III. On this trial, as upon the former one, plaintiff testified to a state of facts tending to show that she was forcibly defiled by defendant. Such testimony was held admissible in the former opinion for the purposes therein indicated, but not as tending to show a promise of marriage or as afford-

*5. BREACH OF MARRIAGE PROMISE: evidence.*

ing reasons for augmenting the damages. The trial court so instructed, and there was no error in admitting the testimony. The instruction was favorable to defendant, and of this he can not complain. The alleged rape was so closely connected with the transaction as to be a part thereof, and the testimony was admissible.

IV. Defendant's counsel further argue that there was no testimony tending to show seduction. Plaintiff's testimony on this point was stronger than at the former trial, and there was no error in submitting this matter to the jury. This was done by instructions four and thirteen, reading as follows:

6. SEDUCTION: instructions construed.

(4) Seduction is the carnal knowledge by a man of an unmarried woman of a previously chaste character, accomplished by means of some false promise, artifice, flattery or deception. It is not sufficient that plaintiff alone show that defendant had sexual intercourse with her, but it must appear that the plaintiff was then an unmarried woman of previously chaste character, and that the defendant accomplished his purpose by some false promise or artifice, or that she was induced to yield to his embraces by flattery or deception. If the plaintiff was not then an unmarried woman of previously chaste character, or if without being deceived, or without any false promise, deceit or artifice, she voluntarily submitted to the defendant's embraces, the law affords her no remedy in a civil action for damages.

(13) In relation to the measure of plaintiff's recovery you are further instructed if you find she is entitled to recover for breach of promise of marriage, as hereinbefore instructed, then, in that event, you will determine whether she is entitled to recover enhanced or additional damages on account of seduction, as alleged by her in her petition; and in relation thereto you are instructed that if you further find from the evidence, by a preponderance thereof, that while the plaintiff and defendant were mutually promised in marriage, if they were so promised, and intending and expecting marriage, the defendant solicited, in consideration of such intention and expectation, and the plaintiff permitted in consideration of such expectation and inten-

tion, sexual intercourse with her, such facts may be considered by you in connection with the facts shown in relation to the plaintiff's character, in computing the damages in this case in so far as they tend, if they do tend, to aggravate and increase the disgrace, mortification, pain or distress of mind, which she has suffered by reason of the defendant's breach of contract for marriage alleged by the plaintiff in her petition; provided, however, that the plaintiff can not, in any event, recover of the defendant damages for seduction unless she was, at the time of such seduction, an unmarried woman of previously chaste character.

Instruction four is not seriously complained of; but it said that thirteen entirely minimizes the effect of four and is in conflict therewith.   It is also argued that thirteen is erroneous in that it omits the thought that to constitute seduction the intercourse must have been had by reason of the promise of marriage or because of some artifice practiced by defendant.   It is fundamental that instructions should be considered as a whole, and that those relating to the same subject-matter should be read in connection with each other.   When so construed the instructions appear to be correct.   We are not to be understood as holding thirteen standing alone is incorrect.   Certain it is that it does not conflict with No. 4.   It is a mere amplification thereof and a direction to the jury as to the purpose for which it should consider the testimony as to seduction.   No prejudicial error is here shown.

V.   Instruction No. 7 does not, as counsel contend, assume any facts as being true.   We shall not set it out. The jury is left to determine the facts, and these being found the trial court correctly states the effect to be given such facts.

VI.   That seduction may be considered in aggravation of damages in such cases as this is too well settled to re-
7. SAME: damages.    quire the citation of authorities. But see *McKinsey v. Squires*, 32 W. Va. 41 (9 S. E. 55); *Wilbur v. Johnson*, 58 Mo. 600; *Musselman v. Bar-*

*ker,* '26 Neb. 737 (42 N. W. 759); *Dent v. Pickens,* 34 W. Va. 240 (12 S. E. 698, 26 Am. St. Rep. 921), and notes.

VII.    The court instructed the jury that in measuring the amount of plaintiff's damage it might consider the pe-

8. SAME.          cuniary benefit the marriage might have been to her. In this there was no error. *Holloway v. Griffith,* 32 Iowa, 409; *Rime v. Rater,* 108 Iowa, 61.

VIII.    Lastly, it is insisted that the jury returned a quotient verdict. The record does not sustain the claim; but on the contrary negatives the proposition.

No prejudicial error is shown, and the judgment must be, and it is, *affirmed.*