OF THE

STATE OF IOWA

AT

DES MOINES, MAY AND SEPTEMBER, 1914, TERMS

AND IN THE SIXTY-EIGHTH YEAR OF THE STATE.

---

JOHN H. CHOWN, Appellee, v. LENNOX FURNACE COMPANY, Appellants.

**Master and servant:** NEGLIGENCE: PROXIMATE CAUSE: EVIDENCE. The proximate cause of an injury for which an employer is liable is one which directly produces, or directly occurs in producing the injury; and in the event of an unbroken connection between the negligent act and the injury, the act is the proximate cause of the injury. Under the evidence in this case the question of whether defects in an emery wheel which burst, causing plaintiff's injury, was the proximate cause thereof was for the jury.

**Trial:** ADMISSIONS OF COUNSEL IN ARGUMENT: CONCLUSIVENESS. While formal admissions made by counsel during the progress of a trial are binding, when so intended, the concessions of counsel made in the heat of argument are not conclusive, but are the proper subject of comment by counsel for the adverse party.

**Master and servant:** NEGLIGENCE: ASSUMPTION OF RISK: EVIDENCE. Under the evidence in this case the question of whether the plaintiff

VOL. 166 IA.—1

assumed the risk of injury from the breaking of an emery wheel, while operating the same, was for the jury.

**Same:** CONTRIBUTORY NEGLIGENCE. Under the evidence it was also a question for the jury to determine whether plaintiff was guilty of such negligence as to preclude recovery for his injury, caused by the bursting of the emery wheel which he was operating.

**Same:** NEGLIGENCE OF VICE-PRINCIPAL. An employee, whose duty it was to employ men, provide the necessary appliances and direct them in their work, and who was not at the time of plaintiff's injury actively engaged in the operation of the machine with which he was at work, was a vice-principal; and upon notice his failure to remedy a defective appliance was that of the master for which he was liable.

*Appeal from Marshall District Court.*—HON. CLARENCE NICHOLS, Judge.

TUESDAY, MAY 12, 1914.

ACTION for damages based on negligence. From a verdict and judgment for plaintiff, the defendant appeals.— *Affirmed.*

*Carney & Carney,* and *Clark, Byers & Hutchinson,* for appellant.

*Bradford & Johnson,* for appellee.

WITHROW, J.—I. The plaintiff in July, 1910, was in the employ of the defendant as an unskilled laborer. He sought employment as teamster from Mr. Chamberlain, the foreman, but, there being no opening in that work, he was put at other jobs. The business of the defendant was the manufacture of furnaces, and as a part of the work it was necessary to trim or finish the castings which were used by breaking off lugs which remained and grinding the casting on an emery wheel. Plaintiff was put at this work, but at times was assigned to other duties of common labor. He had had no experience in the particular work of trimming the castings, but was directed

by the foreman as to the manner in which it should be done. Upon the castings as they came from the mold were projections called gates, which needed to be removed to finish the piece. On the day of his injury the plaintiff, as he testified, was cutting off these gates or projections, having been directed by the foreman to so do, placing the grate on the floor, and using a hammer and cold chisel. The foreman noticed the manner in which he was doing the work, and said, ''That takes too much time; I will show you a better way to do it.'' According to the testimony of the plaintiff, the foreman then took the casting, laid it on a bar of the frame which held the emery wheel, which was at the time revolving, struck the lug or gate with the hammer, and broke it off. He then directed the plaintiff to wheel some coal to another part of the factory, having done which he returned to his former work. He testified that he picked up a grate, ground off some small pieces, and, there being a lug or projection on it, he broke it off in the manner in which he was instructed to do by the foreman. He testified that he saw the piece fly in the air the second time he struck it, and it flew into the wheel, and hit it and fell in by the side of it. Immediately there was an explosion or break of the wheel, its parts flying in different directions, one of them striking plaintiff's hand, and so injuring it that amputation was necessary.

The foreman in his testimony stated that in directing the plaintiff as to the manner in which to break off the lugs or gates he placed the casting on the floor, and did the work there, and did not direct the plaintiff to use the frame or bar as a place upon which to do such work. Plaintiff's employment extended only over a week, and he testified that during that period he did not work more than ten or fifteen hours on the emery wheel. The evidence tends to show that at the time of the accident the wheel was revolving rapidly, at about 2,000 revolutions per minute, and that the factory test of the wheel had resulted in the recommendation that it be run at 950 revolutions per minute. There also was evidence to the effect

that the wheel was, as some witnesses term it, ''wobbly'' on its shaft, but as to this, and also as to the speed at which it was then going, there is dispute.

A witness, Borchardt, testified that he was at the time in the employ of the defendant, and in his employment had occasion to see and use the emery wheel in the factory. About a week before the accident he says he noticed this wheel, and that it appeared to be seamed with three small cracks, which he describes as being about three inches from the hole that the mandrel ran through, running towards the edge of the wheel, and that they were two or three inches long. He testified that he told the foreman of its condition, but that the latter said they would have to use it as it was all they had, and they must keep it going as they were behind with the work. The foreman testified that his attention had never been called to any cracks. Other witnesses testified that they had used the wheel, but had not noticed any cracks in it. There also was evidence tending to show that the hammer used by plaintiff had marks upon it, from which it is claimed that he struck the wheel with it.

Plaintiff's action was based upon negligence charged as follows: In providing for his use an emery wheel with the bar or rest of the frame so far from the wheel as to permit castings or other articles to be drawn between the wheel and the bar, thereby rendering the machine unsafe for use; in furnishing for use an emery wheel known to be unsafe for use at more than 1,200 revolutions per minute, and operating it at about 2,200 revolutions per minute, thereby rendering it unsafe for plaintiff's use; in failing to guard the wheel with a shield or cover of sufficient strength to arrest the flying fragments of the wheel should it burst; in providing for plaintiff's use an emery wheel in which there were flaws, thereby rendering it unsafe. In submitting the case to the jury the trial court withdrew all charges of negligence excepting the one last given, which was in providing for plaintiff's use a defective emery wheel. Upon submission to the jury a verdict

was returned for the plaintiff, and from the judgment entered
this appeal is taken.

II. The assignments of error relate to the sufficiency of
the evidence to support the verdict, in that it was not shown
that the cracks in the emery wheel were the proximate cause
of the injury, or that it was negligent to run the wheel with
surface cracks in it, and also raise the questions of assumption
of risk, negligence of a fellow servant, and contributory negli-
gence, all of which arose under the pleadings. These ques-
tions were raised in a motion to direct a verdict, by in-
structions which were requested by the defendant, and also
arise under the instructions given by and the rulings of the
trial court.

III. Upon plaintiff's theory of the case the facts were
in dispute; and, unless the objection to their legal sufficiency
is good, taking them in their strongest bearing in support
of his claim, they were such as to require
the submission of the case to the jury. As-
suming that, in using the bar or frame near
the emery wheel as the place where to break
off the lugs, the plaintiff followed the directions of the fore-
man, there is then presented the question whether the defective
condition of the wheel was the proximate cause of the injury.
Such a cause is that which directly produced, or concurred
directly in producing, the result. This court in *Liming v. Ill.
Central Ry.*, 81 Iowa, 252, has recognized the governing rule
in determining the question to be, "Was there an unbroken
connection between the wrongful act and the injury—a con-
tinuous operation? Did the facts constitute a continuous
succession of events, so linked together as to make a natural
whole, or was there some new and independent cause interven-
ing between the wrong and the injury?" The contention of
the appellant is that at most it is only a question of prob-
ability under the evidence as to what was the cause of the
injury, and that under the rule of *Breen v. Iowa Central Ry.
Co.*, 163 Iowa, 264, and cited cases, which requires the facts and

1. Master and
   servant: neg-
   ligence: proxi-
   mate cause:
   evidence.

circumstances to be of such nature and weight, and be so related, as to render it reasonably probable, or more probable, that the accident was caused by the negligence charged rather than from any other cause, there is not in the record that which sustains the claim of the plaintiff. The wheel at the time was revolving rapidly. There was evidence tending to show that it was cracked, and therefore defective. It is a matter of common knowledge that because of what is known as centrifugal force there is a tendency in matter, unless strongly bound, to fly from a rapidly revolving center, and that this tendency is increased as the solidity of the revolving body is lessened by cracks or otherwise; and, although this was not in the present case made the subject of proof, we think the jury had the right to consider this commonly known fact in determining the case. While at the very moment of the injury the plaintiff was not engaged in using the wheel, yet it was in motion, started by himself, running at a rate of speed which he could not control, that being no part of his duty; it being his intention immediately upon breaking off the lug to smooth the casting by applying it to the wheel. Although there is evidence tending to show that there was an intervening and independent cause which operated directly upon the wheel and caused it to break, that is, either by the lug which was broken off becoming lodged between the wheel and the casting, or by a blow from the hammer or the grate held by the plaintiff, we are of opinion that it is not of such weight as to require a finding under the law that either one of such was the immediate, operating, and controlling cause. The evidence of the plaintiff was of the circumstances and conditions as they appeared to him immediately before the accident; and, while some parts of it, taken separately, sustain the position of the appellant as to the cause, we think, taken as a whole, it cannot be said to establish that as a fact, but in the light of all the evidence required the submission of the question to the jury. This the trial court did in instructions which covered fully the question of proximate cause.

In his argument to the jury counsel for the plaintiff used the following language: ''They say that we have got to prove to you that this accident would not have occurred if. there were sound wheels. Why, I do not understand that we are having anything to do with sound wheels. I understand we are talking about an unsound wheel that is ready to break, and with cracks and everything of that kind. Now, if the wheel was not in that condition, and was a sound wheel, why I believe, although we do not have to prove that, I believe that a sound wheel would have broken with a casting thrown in there, but that is not what we claim was there. We claim that there was an unsound wheel there, and it broke, but if it was a sound wheel, it broke because of this casting in between there, and broke because of the rapidity of the speed.'' The appellee urges this as an admission which is binding on the plaintiff and controlling in the case. Formal admissions of counsel, during the trial of a case, and so intended, are binding. Made in the heat of argument they may not represent the position of the party so fully or correctly as when deliberately uttered. While a proper subject of comment, we cannot hold them to be controlling.

2. TRIAL: admissions of counsel in argument: conclusiveness.

IV. It is claimed that if the wheel was defective by reason of cracks in it, and that, if it be held to be a matter of common knowledge that wheels in that condition are more likely to break, the plaintiff was charged with that knowledge, and that he assumed the risk arising from using the wheel in that condition. This proposition necessarily carries with it the further one that before his accident the plaintiff knew of the condition of the wheel and appreciated the danger, but that he did so know, or did so appreciate the danger, does not appear in the evidence only from the fact that another witness, who is claimed to have had no better opportunities to see, testified that he saw them; but the plaintiff did not admit having seen them. The foreman testified that because of the

3. MASTER AND SERVANT: negligence: assumption of risk: evidence.

color of the wheel, if cracks were in it, they could have been seen only by close inspection. The circumstances and facts bearing upon this branch of the case were properly made the basis of instructions to the jury upon the question of the assumption of risk, and in the instruction given upon this subject we find no error.

V. It is claimed that in knocking off the lug or gate from the casting so close to the emery wheel, and while it was running, the plaintiff was guilty of contributory negligence. There was evidence to the effect that

4. SAME: contributory negligence. he was directed to do the work in the manner he did, and at that place. While as to this there was dispute, the ultimate fact was to be determined by the jury. The trial court instructed that if the plaintiff was directed to knock off the lugs on the floor, and if he disregarded the instructions and placed the casting upon the bar for that purpose, then he would be guilty of contributory negligence. Instruction was also given that if he placed the casting on the bar within an unsafe distance of the wheel, and not where he was directed to put it, if he was so directed, and that if his injury was the result of his working at such unsafe distance, such would be contributory negligence. It is contended by the appellant that the foreman did not direct the plaintiff to use the bar or frame for that purpose when the wheel was revolving, and that in using it under such conditions he was negligent. It is shown by the evidence that the plaintiff had no particular experience with this class of work; that he had been a general laborer engaged in many and varied common and unskilled employments, chargeable, of course, with the knowledge of probable cause and effect as to all matters where a person of his experience would be so charged, but no further, but not necessarily nor as a matter of law negligent in doing a thing in a manner claimed to be negligent, unless from the circumstances under which it was done no other conclusion could fairly be reached. The facts are not

such that we can so find. It was a question to be determined by the jury.

VI. The appellant contends that the injury of which plaintiff complains, assuming that it was caused by the defective wheel, resulted from the negligence of a fellow servant, Chamberlain, and not of the master; that

5. SAME: negligence of vice-principal.

Chamberlain, the foreman, as claimed by the plaintiff, was informed by the witness, Borchardt, a day or two before the accident, of the unsafe condition of the wheel, but did not remedy it by substituting a new one, although there were others in supply which could have readily been obtained. It does not appear that Chamberlain, in the work which the plaintiff was performing, was in any way connected with it as an operative act; his relation to Chown was wholly as a superior; he was charged with the authority and duty, not only of employing men, but also of directing when they should work, and of providing them with the necessary means and equipment with which to work. It is a duty of the master to supply the employees with safe machinery, and if for any reason it becomes unsafe, it is his duty to make it safe either by repair or substitution. While Chamberlain was an employee of the defendant corporation by reason of his position in respect of furnishing means of work, he stood in the relation of vice principal to other employees. His attention having been called to the unsafe condition of the wheel, and such knowledge having been brought to him as one representing the employer, it became his duty, not as a co-employee, but as one standing for the master, to remedy the condition. *Newbury v. Manufacturing Co.*, 100 Iowa, 441; *Collingwood v. Fuel Co.*, 125 Iowa, 537.

If there was neglect on the part of Chamberlain to procure another wheel, such had no relation to the employment and service of the plaintiff other than as a part of the machinery to be used by him, and this was primarily the master's duty, and which was by it delegated to its foreman. The case is unlike that of *Ashcraft v. Locomotive Works*, 148 Iowa,

420, relied upon by appellant, where the proper means were furnished by the master for doing the work, but were not used by the foreman, who was, as this court determined under the facts in that case, a fellow servant of the plaintiff in doing the actual work then in hand, and in selecting the means by which it should be done.

VII. The questions we have considered cover all matters presented in the assignment of errors. We find no error in the record, and the judgment of the trial court is—*Affirmed.*

LADD, C. J., and DEEMER and GAYNOR, JJ., concurring.