MAHALA DAVIS, Appellee, v. CITY OF DUBUQUE, Appellant.

No. 40139.

APRIL 14, 1930.

*M. H. Czizek,* for appellant.

*J. W. Kintzinger,* for appellee.

GRIMM, J.—It is claimed by the plaintiff that, on the evening of August 31, 1927, she fell on a sidewalk on the north side of East Fifteenth Street, between Maple and Cedar Streets, in the city of Dubuque, Iowa, and as a result thereof, received physical injuries. The part of the sidewalk of which complaint is made is at the point where a driveway crosses the same, and it appears that, as a result of the traffic across the sidewalk, a large part of the surface of the sidewalk has been broken away and entirely removed, leaving only the base or foundation, composed, apparently, largely of cinders and other similar material. This broken area appears to have been about six feet in width, east and west, at the middle of the sidewalk, and, although not definitely shown, about the full width of the sidewalk. In the north half of this space, extending south approximately to the center of the sidewalk, but within the line of the sidewalk, there remained a piece of the cement surfacing of a somewhat irregular but triangular shape, about 15 inches each way. According to some of the witnesses, parts of it stood up above the general level of its surroundings about half an inch. Some of plaintiff's witnesses claim that parts of this block projected above the surroundings about three inches. There is nothing very definite on this subject. The edges of the broken cement, both on the outer edges of the damaged area and on the outside of the triangular piece remaining, were more or less irregular. For want of a better name, we will hereinafter call the triangular piece of cement the "cement block." The space around it was filled with cinders and some gravel.

The plaintiff lived a short distance from this point, having moved there in July of 1927. She had frequently been over this sidewalk during the months of July and August, 1927. On direct examination, she testified that she had gone over this walk to the store, during the daytime, two or three times during a week, while she had lived in the property. This was approximately six weeks. In other words, on direct examination she testified that she had been over this walk 15 or 18 times. On cross-examination she said:

"I went over this walk five or six times during the day while I was there, and five or six times during the night, in a month and a half. On those occasions I always went to the store. Once or twice I went to town, and walked over this walk.

Each time during the day when I went over this walk, I looked ahead where I was going.''

She claims she always walked along the cinders. She testified, ''There was a track across there through those cinders.'' It clearly appears from the record that these trips were made both in the daytime and at night.

The plaintiff was asked whether, in making these trips, she noticed any break in the sidewalk at the point in question, and she said, ''I might have, but I didn't pay any attention.'' She then proceeds to give a description of the walk at the point where the injury was received, describing the location, the cross drive to the garage, the cinders, and the conditions generally. She further states:

''When I passed over that walk in the daytime, I walked across on the cinders on the crosswalk, to get to the cement on the other side. In walking across there, I was looking straight ahead of me. There was a track across there through these cinders. I was looking straight ahead of me, and walking along on those cinders.''

She then describes the trip on which she claims to have received her injury. She said she was taking a walk, about 8 o'clock in the evening. On her return trip to her home, she remembered getting to the end of that crosswalk at the break in the sidewalk. She started across the break, took two or three steps in the cinders, looking where she was going, and her foot caught, and she fell. She says she reached around, to ascertain upon what she had fallen, and found that it was the cement block. She testified that, before the time of her fall, she didn't realize that there was any danger connected with that block of cement in the crosswalk, or that there was any danger in trying to get over the walk at that point. In fact, she said she didn't appreciate that there was any danger in connection with the use of the walk at that point.

After an extensive cross-examination, during which time she always answered that, when she saw the cement block, she paid no attention, she finally said:

''Q. You never saw the little block of cement that was in it [the sidewalk]? A. I might have, but I never paid any

attention. Q. There was nothing about the little block of cement that caused you to think in any manner that it was dangerous,—is that right? A. That's right. Q. And there was nothing about the condition of this walk, as you walked along there, which impressed you that there was any danger connected with walking along? A. Not a thing. Q. So far as your observation was concerned, there wasn't any danger connected with walking along? A. There was when I fell. Q. But before that, as you walked across back and forth on that walk, there wasn't anything there that caused you to think there was anything dangerous about it,—that right? A. That's right, I guess. Q. And during all the time you walked across there, you never saw this little block of cement? A. I might have seen it, but I paid no attention. Q. If it was there, and you saw it, it wasn't anything that caused you to think it was dangerous? A. No, not until I fell; after I fell, I found out it was. Q. So, as you went along there back and forth, your feeling was that you could walk over that sidewalk in perfect safety? A. I thought so. Q. You went over that walk just a few minutes before you fell? A. I went up. I went across the cinders; yes, sir.''

She further described the accident as follows:

''I was walking about the middle. I stepped onto the cinders with one foot, and when I went to step with the other, I stubbed my toe, and down I went. I took two or three steps before I struck this little cement block. When I stepped off of the cement walk, I knew that I was on the cinder part of the walk. Then I stubbed my toe and fell. I caught my toe in this cement sticking up, and went down. I didn't think there was any danger until I fell.''

I. Among the alleged errors complained of is that the court erred in giving, on its own motion, to the jury Instruction No. 9. It is as follows:

''There is evidence in this case of plaintiff's use of said sidewalk prior to the time of her alleged injury. This evidence will have a bearing upon the question of whether or not plain-

tiff knew of the defect alleged. In this respect you are instructed that, if plaintiff, at the time of her alleged injury, did not see or observe the cement block alleged, then, from her previous use of said sidewalk, she can be charged with such knowledge only if, acting as an ordinarily intelligent and observing person, in the exercise of ordinary care, under all the circumstances, she did, or was likely to, observe this condition, and *remembered it at the time of her alleged injuries."* (Writer's italics.)

The appellant claims that this instruction is faulty in three particulars: First, that it relieved plaintiff of the use of ordinary care to observe and avoid an apparent defect; second, that it relieved her of contributory negligence if, knowing of the defect, she had not remembered it at the time of the accident; and third, that it relieved plaintiff of negligence if, knowing of the defect, she did not observe it the night of the accident, or had forgotten it.

In the first place, the plaintiff nowhere says that she did not see the cement block, as a result of her very frequent trips over the sidewalk in question prior to the time of the injury. It is also true that she does not specifically or directly admit having seen it, though she says she might have, protesting in the same breath that she "paid no attention." It was for the jury to determine, as a question of fact, whether the plaintiff knew that the so-called obstruction was there. If the jury should find that the plaintiff knew the obstruction was there, then the instruction under consideration relieved the plaintiff from her responsibility growing out of said knowledge, if she did not remember that the obstruction was there.

A person may be excused in law from passing into or upon a known dangerous piece of sidewalk if the attention is diverted, for the time being. In *Bender v. Incorporated Town,* 124 Iowa 685, this court said:

"But what will constitute such diversion as will excuse him? This is the pivotal question on this branch of the case. If the diversion is self-induced,—that is to say, due to inattention or forgetfulness,—it is manifest that it is not sufficient, and will not excuse; for, if it is due to mental abstraction or heed-

lessness, it is not a diverting cause. Indeed, we have expressly held that the presence of other parties with whom the injured person is talking is not a diverting cause.''

Nothing happened to divert the plaintiff's attention; but the instruction excuses her if she *forgot* that the obstruction was there. Under the record in this case, this was an erroneous statement of the law, and was prejudicial to the defendant. Under such cases, forgetfulness cannot be construed as a diverting circumstance which will excuse the plaintiff. See *Waterbury v. Chicago, M. & St. P. R. Co.*, 104 Iowa 32; *Cressy v. Town of Postville*, 59 Iowa 62; *Munger v. City of Marshalltown*, 56 Iowa 216; *Tuffree v. Incorporated Town of State Center*, 57 Iowa 538.

II. The appellant also complains of Instruction No. 16, which is as follows:

"You are instructed that evidence has been admitted before you that plaintiff made certain declarations and statements. Verbal statements or admissions should be *received by you with*  *caution,* as they are subject to much imperfection and mistake, owing to the person speaking, not having clearly expressed his own meaning, or the person spoken to, not having thoroughly understood the speaker; but when verbal statements are established to your satisfaction, they should be taken by you, together with all the other evidence in the case, and given such weight and credit as you believe they are entitled to receive.'' (Writer's italics.)

There is a very substantial amount of evidence in the record tending to show that the plaintiff received the injuries of which she complained, not from falling on the sidewalk, as she alleged, but from falling on a stairway in her home. A neighbor, Mrs. Lillian Leib, stated that, on August 31, 1927 (on the evening of which day plaintiff claims to have fallen on the sidewalk), the plaintiff came to the house of the witness in the afternoon of that day, where a birthday party was being given for the daughter of the witness. The plaintiff came to the party limping, and using a stick as a cane. The witness testified that, upon her asking the plaintiff how she was injured, she stated that she fell between her two rooms, from a high step. She related

that she injured her limb, and that the accident happened a few days before the 31st of August, 1927. It appears that the witness visited the plaintiff several times thereafter, and that on such occasions the plaintiff also told the witness that she "fell on the step between the two rooms," the same as before.

A Mr. Rahlof testified that he called one evening on the plaintiff, a short time after August 31, 1927, at the request of his (Rahlof's) wife. On arriving at the house, he found a little boy, sitting in the kitchen, reading by a lamp. The boy invited Mr. Rahlof from the kitchen into the room where the plaintiff was lying. In passing from the kitchen to this room, it was necessary to go up two steps, and, as the witness was about to do so, the plaintiff said to the boy: "Bring a light; don't let him fall like I did on those steps." After visiting some time, the witness started to leave, whereupon the following conversation passed between the witness and plaintiff: Witness, "I must be going; it is too bad you fell on those steps." Then the plaintiff called to the boy, saying, "Bring the light, 'so Mr. Rahlof didn't fall like I did, and break his leg.'" The witness at another time stated: "She told me that she hurt her leg by falling on this step in the house. She didn't say she broke her leg, but hurt her hip."

Another witness, George Leib, testified that he saw the plaintiff in the afternoon of the 31st of August, 1927, at his home, where the birthday party was being given; that the plaintiff came there walking with a cane; that she was limping.

Another witness, Edward Krieg, who lived at the Leib home, testified that he saw the plaintiff at the Leib home on the occasion of the birthday party on the afternoon of August 31, 1927. He testified that she came over there with a cane, and was limping. He testified that he overheard the plaintiff, on that occasion, say that she fell that morning.

On rebuttal, the plaintiff denied having come to the birthday party with a cane, or limping. She generally denied the statements made by the witnesses, but stated that, sometime after August 31, 1927, when moving around her house on crutches, alone in the house, she slipped and fell.

In light of this record, it will be noted that the instruction definitely states to the jury that verbal statements or admissions should be received with caution, as they are subject to much

imperfection and mistake. No complaint is made of this part of the instruction, but the appellant claims that by the language which follows the instruction is not properly balanced in accordance with the law. The balancing portion of the instruction is as follows:

"But when verbal statements are established to your satisfaction, they should be taken by you, together with all the other evidence in the case, and given such weight and credit as you believe they are entitled to receive."

A properly balanced instruction on this question is sometimes known as the "Greenleaf Rule," found in 1 Greenleaf on Evidence, Section 200. The question came before this court in *Martin v. Town of Algona,* 40 Iowa 390, when a similar instruction was called in question. We quote from the opinion:

"The court directed the jury that such evidence, 'consisting of the mere repetition of oral statements, and being therefore subject to much imperfection and mistake, through misunderstanding, excitement, or impulse of the party, and want of proper understanding of the words by the hearers and their imperfection of memory, should be cautiously received; *but when such admissions are deliberately made, or often repeated, and are correctly given, they are often the most satisfactory evidence*; that the jury should consider all the circumstances under which such admissions were made and introduced in evidence, and give them such weight as they were justly entitled to receive.' " (Writer's italics.)

The instruction thus referred to was approved, as within the Greenleaf rule. It will be noted that the instruction cautions the jury, on the one hand, and then the instruction is balanced with the statement that, "when such admissions are deliberately made, or often repeated, and are correctly given, *they are often the most satisfactory evidence.*" (Writer's italics.)

The rule is again announced in *Allen v. Kirk,* 81 Iowa 658.

In *Scurlock v. City of Boone,* 142 Iowa 580, this court, speaking through Justice Evans, reversed the lower court because, in an instruction given to the jury, the court gave only the cautionary portion of the Greenleaf rule, without stating the balancing portion, to the effect that, if the admissions are

deliberately made or often repeated, they are often the most satisfactory evidence. The court said:

"It will be observed that the instruction under consideration, through probable oversight, falls short of stating the Greenleaf rule. As set forth in the *Martin* case [supra], the following should have been added: 'But when such admissions are deliberately made or often repeated, and are correctly given, *they are often the most satisfactory evidence,* and the jury should consider all the circumstances under which they were made, and give them such weight as they are justly entitled to receive.' This latter proviso gives a proper balance to the rule." (Writer's italics.)

In *Hawes v. Burlington, C. R. & N. R. Co.,* 64 Iowa 315, an instruction similar to the one under consideration was condemned, and the case reversed.

See, also, *Castner v. Chicago, B. & Q. R. Co.,* 126 Iowa 581, where the Greenleaf rule is quoted, and an unbalanced instruction, such as the one at bar, is condemned, and the case reversed.

The giving of said Instruction No. 16 was erroneous and prejudicial.

Many other questions are presented and argued, but we deem it unnecessary to consider them. For the errors pointed out, the case must be, and is,—*Reversed.*

MORLING, C. J., and EVANS, FAVILLE, and KINDIG, JJ., concur.