ROBERT L. JOHNSON, JR., Appellee, v. W. D. KINNEY et ux., Appellants.

No. 46024.

December 15, 1942.

Gibson, Stewart & Garrett, of Des Moines, Fitzpatrick & Barlow and L. R. Boomhower, all of Mason City, for appellants.

Senneff & Duncan and Morgan J. McEnaney, all of Mason City, for appellee.

GARFIELD, J.—Defendants, husband and wife, own and operate a farm of over 3,000 acres in Cerro Gordo county. J. E. Risden was the farm manager, with general supervision of the work. Plaintiff, a farm hand then 21 or 22, commenced working for defendants about March 1, 1940. On March 25, 1940, a circular saw was attached, by means of a belt, to an Oliver farm tractor, for the purpose of sawing wood. Gilbertson and Reindl, two other employees, were engaged in the sawing. Risden, the manager, directed plaintiff to assist them and to report to Gilbertson, who would tell him what to do. Plaintiff went to Gilbertson, who directed him to bring the wood from the pile to the saw. Reindl had put the tractor and saw in place for the work, set the belt, started the power, and adjusted the speed of the tractor engine and saw. This was all done and Gilbertson and Reindl had started sawing when plaintiff arrived.

After two and one half to three hours they stopped sawing and Gilbertson said that would be all. It is plaintiff's claim and he testified that Gilbertson then directed him to shut off the power on the tractor; that the other two men started filling the trailer with wood; that plaintiff walked around to the back of the tractor, shut off the power, and as he was pulling his hand back his mitten caught in the power take-off shaft, which was still revolving very fast, injuring his right hand and arm.

The power take-off shaft protruded from the rear of the tractor 44 inches above the ground and 12 inches below the seat. The exposed part was $3\frac{1}{2}$ inches long and $1\frac{3}{8}$ inches in diameter, with six notches or grooves in it. The shaft is for the purpose of running power machinery. When a corn picker, grain binder, or mower is hooked onto the shaft, motive power is transferred from the tractor engine to the machinery. On the day in question the shaft was not in use. Power was transmitted to the saw by means of a belt placed over a pulley wheel, about 18 inches in diameter, to the front and on the right side of the tractor.

It is plaintiff's claim that defendants were negligent in not having a guard or shield over the exposed shaft with which he came in contact. There is testimony that there is available from the Oliver tractor company a shield or guard, shaped somewhat

like a deep cup or an auto hub cap, to cover the shaft. Plaintiff testified that after he was injured he saw such a shield in the tool shop on defendants' farm and that it would fit over the exposed part of the shaft. There is nothing to dispute this testimony. Both Reindl and Gilbertson testified they never saw the shaft covered by a shield. There is no testimony that defendants kept the shaft covered at any time before the day of plaintiff's injury. The tractor was purchased in 1937 or 1938 from the Oliver establishment in Mason City. A service man for the company testified that the tractors sold at Mason City do not come equipped with the power take-off shaft but that they must be bought separately.

Plaintiff testified without contradiction that he had never used an Oliver tractor, that he had driven another make of tractor in the field and used it with a belt pulley before he worked for defendants, and that he had not helped saw wood for defendants before the day in question. On March 25th the tractor was headed west, the power take-off shaft protruding to the east. The saw was in front and west of the tractor some 15 to 20 feet. The pulley belt extended to the saw from the north or right side of the tractor. The pile of uncut wood was about 20 feet north of the saw. The trailer near which the cut wood was piled was 6 or 8 feet south of the saw. During the entire work of sawing, plaintiff was carrying the uncut wood from the pile to the saw which Gilbertson was feeding. Reindl was taking the cut wood from the saw to the pile near the trailer. There is no testimony that plaintiff went to the rear of the tractor at any time before he claims to have attempted, pursuant to Gilbertson's direction, to shut off the power.

The jury returned a verdict for plaintiff of $1,312. From the judgment entered thereon and the overruling of their motion for new trial and exceptions to instructions, defendants have appealed.

 I. Appellants first complain that the court failed to submit their pleaded defense of assumption of risk. The sole ground of negligence alleged by appellee or submitted to the jury was failure to provide reasonably safe machinery in negligently failing to furnish a guard for the shaft in question. Unless appellants were negligent in this respect, appellee was

not entitled .to recover. The court so instructed. If appellants were negligent in the respect charged, appellee did not assume the risk therefrom by continuing in the work unless in the usual course of his employment it was his duty to remedy the defect, and even if such were his duty, he assumed no risk therefrom unless the danger was imminent so that a reasonably prudent person would not continue in the work. This is the plain provision of section 1495, Code, 1939, as construed in Correll v. Williams & Hunting Co., 173 Iowa 571, 155 N. W. 982, Ann. Cas. 1918A, 117; Bell v. Brown, 214 Iowa 370, 239 N. W. 785; Lang v. Hedrick, 229 Iowa 766, 773, 295 N. W. 107, 111.

Appellants do not contend that appellee in the ordinary course of his employment was under any duty to remedy the alleged defect in the tractor. It conclusively appears he was under no such duty. The court therefore properly withdrew from the jury the defense of assumption of risk.

In addition to the fact that appellee was under no duty to remedy the alleged defect, we doubt if the evidence would warrant a finding that the danger from the unguarded shaft was so imminent that a reasonably prudent person would not have continued the work. Assumption of risk was an affirmative defense. The burden of proof on this issue rested upon appellants. There is no evidence that appellee had any previous experience with this or a similar tractor or that he knew of the presence of this unguarded part. His work during the sawing operations did not take him where he could see this shaft. There is no evidence he did see it before coming in contact with it. Since appellee was under no duty to repair, however, we need not determine whether there was imminent danger from the alleged defective machinery.

██ II. Appellants' answer alleged that appellee was guilty of contributory negligence which bars recovery or is in mitigation of damages. Appellee's petition did not allege freedom from contributory negligence. The court instructed the jury to consider this defense only in mitigation of damages. This was proper. Section 11210, Code, 1939; Oestereich v. Leslie, 212 Iowa 105, 113, 114, 234 N. W. 229, and cases cited; Morse v. Century Cab Co., 230 Iowa 443, 448, 297 N. W. 877, 880, 134

A. L. R. 635; Band v. Reinke, 230 Iowa 515, 517, 518, 298 N. W. 865, 867.

Appellants assert, however, that the instructions do not define contributory negligence. The court properly defined negligence and ordinary care and told the jury, in effect, that contributory negligence was negligence on appellee's part which contributed to his injury, and that appellee was under the duty to exercise reasonable care under the facts and circumstances shown in evidence. The instruction on contributory negligence was patterned largely after the one approved in Oestereich v. Leslie, 212 Iowa 105, 113, 234 N. W. 229. At least, in the absence of a request for a more complete definition, the instructions sufficiently defined contributory negligence. Becvar v. Batesole, 218 Iowa 858, 860, 256 N. W. 297; Winter v. Davis, 217 Iowa 424, 433, 251 N. W. 770; Fisher v. Cedar Rapids & M. C. R. Co., 177 Iowa 406, 420, 157 N. W. 860.

Although appellants apparently concede that the case properly falls within Code section 11210, providing that contributory negligence is available as a defense in certain cases only in mitigation of damages, it is argued that the jury might have found that appellee was acting outside the scope of his employment at the time he was injured, in which event contributory negligence would bar recovery, and that the court should have so instructed. However, the jury was told in effect that before appellee could recover he must prove he was acting within the scope of his employment by carrying out directions claimed to have been given him by Gilbertson to shut off the power of the tractor, and that if he did not so prove he could not recover. The verdict was necessarily a finding that appellee acted within the scope of his authority. Under the court's instructions, he was not entitled to recover if injured while acting beyond the scope of his employment, regardless of whether he was contributorily negligent. Appellants were therefore not prejudiced by the court's failure to instruct that appellee could not recover if acting beyond the scope of his employment and while guilty of contributory negligence. Band v. Reinke, 230 Iowa 515, 517, 298 N. W. 865, 867, bears on this question.

III. The court instructed in substance that if appellants' manager, Risden, ordered appellee to report at the

saw to Gilbertson, who would tell him what to do, the directions of Gilbertson in connection with the work would have the same effect as if given by Risden or by appellants themselves, and that appellee must have proven that Gilbertson directed him to shut off the power when they finished sawing. Appellants complain of the instruction, claiming that any direction by Gilbertson to appellee to shut off the power did not bind them because Gilbertson was a mere co-employee and not a vice-principal.

The authority of Risden to supervise the farm work is not questioned. It appears without dispute that Risden directed appellee to report to Gilbertson, who would tell him what to do; that appellee went to Gilbertson as ordered; that Gilbertson told appellee to carry wood from the pile to the saw, and, when they had finished sawing, announced that would be all. Appellee testified that Gilbertson then directed him to shut off the power and that he did so. It is true this is disputed. But it is plain that if the testimony of appellee is believed, he was acting within the scope of his employment when injured. Had appellee refused to do as told by Gilbertson, he would have disobeyed the direction given him by Risden, who had placed Gilbertson in charge of the sawing operations.

The question here is not whether appellants are liable for the negligence of Gilbertson. No such claim is made. Nor are we concerned with whether Gilbertson should be classified as a fellow servant or vice-principal. The question here is whether appellee was injured by coming in contact with machinery furnished by appellants which was not reasonably safe, while acting within the sphere of his employment. He was not outside the scope of his employment if, as directed by Risden, he was attempting to do what Gilbertson told him to do. Appellants' attack upon the instruction is therefore not well-founded. As bearing on this question, see 35 Am. Jur. 794, 795, section 369; Collingwood v. Illinois and Iowa Fuel Co., 125 Iowa 537, 543, 101 N. W. 283; Chown v. Lennox Furnace Co., 166 Iowa 1, 9, 147 N. W. 144; Hitchcock v. Arctic Creamery Co., 170 Iowa 352, 376, 150 N. W..727.

IV. Appellants offered the testimony of Dr. Jones

that he examined appellee's arm on July 30, 1940, and found nothing wrong with it. The court sustained appellee's objection that the testimony was privileged. Appellants claim that appellee waived the privilege afforded by Code section 11263 by offering the testimony of Drs. Larson and Weston, and by his own testimony on cross-examination. However, it is clear that appellee did not waive his privilege as to Dr. Jones' evidence by offering testimony of the two other doctors who had treated him on different occasions. Baxter v. City of Cedar Rapids, 103 Iowa 599, 605, 72 N. W. 790; Jacobs v. City of Cedar Rapids, 181 Iowa 407, 420, 164 N. W. 891; Pearson v. Butts, 224 Iowa 376, 387, 276 N. W. 65; Annotation 62 A. L. R. 680, 681.

On cross-examination appellee testified that he did not consult Dr. Jones about his arm but that he saw him regarding another matter, that the doctor then asked him about his arm because it was bandaged, and examined it without being asked to do so. We have frequently said that testimony on cross-examination is not voluntary in the sense that it constitutes a waiver of the statutory privilege. Donovan v. Donovan, 231 Iowa 14, 18, 300 N. W. 656, 659, and cases cited; Cross v. Equitable Life Assur. Soc., 228 Iowa 800, 805, 293 N. W. 464; Lauer v. Banning, 140 Iowa 319, 328, 118 N. W. 446, 152 Iowa 99, 103, 131 N. W. 783; Burgess v. Sims Drug Co., 114 Iowa 275, 280, 86 N. W. 307, 54 L. R. A. 364, 89 Am. St. Rep. 359. See, also, Annotations 114 A. L. R. 798, 799, and 72 A. L. R. 148.

In Jacobs v. City of Cedar Rapids, 181 Iowa 407, 410, 411, 164 N. W. 891, 892, the plaintiff testified on cross-examination, "I did not consult any doctors in regard to my health before my accident." While recognizing the rule that testimony on cross-examination does not ordinarily waive privilege, the court, through Salinger, J., said that plaintiff's testimony precluded her from making the objection. The soundness of this statement was doubted in Cross v. Equitable Life Assur. Soc., supra, 228 Iowa 800, 805, 293 N. W. 464, and it was said to be contrary to the general rule and the rule of this court. Appellee here, however, gave no such testimony as did the plaintiff in the Jacobs case.

When appellants offered Dr. Jones as a witness, "Counsel for plaintiff requested the privilege of submitting a question

of law to the Court in the absence of the jury.'' The court
granted the request and excused the jury from the courtroom.
Appellants' offer of proof and appellee's objection on the ground
of privilege were then made and argued in the jury's absence.
Appellants contend they had the right to call Dr. Jones to the
witness stand and require appellee to object to the doctor's
testimony in the presence of the jury. We think, however, the
trial court did not abuse its discretion in permitting appellee
to claim his statutory privilege in the jury's absence. We have
said several times that it is reversible error to require a plaintiff
on cross-examination to say whether he is willing to waive the
privilege which the statute affords. McConnell v. City of Osage,
80 Iowa 293, 303, 45 N. W. 550, 553, 8 L. R. A. 778; Burgess v.
Sims Drug Co., 114 Iowa 275, 280, 86 N. W. 307, 54 L. R. A.
364, 89 Am. St. Rep. 359; State v. Booth, 121 Iowa 710, 713,
97 N. W. 74; Donovan v. Donovan, 231 Iowa 14, 17, 300 N. W.
656, 658, 659. A party should not be prejudiced by claiming
a right which the law gives him. It is improper to challenge a
party in the presence of the jury to waive his legal rights. In
re Will of O'Connor, 173 Iowa 318, 328, 155 N. W. 290, Ann.
Cas. 1918C, 378; 3 Am. Jur. 609, section 1061. These author-
ities by analogy support the court's action in permitting ap-
pellee to claim his privilege in the jury's absence.

V. Complaint is made of instruction 10 to the effect
that evidence of oral statements claimed to have been made by
appellee during the time covered by his testimony should be
closely scrutinized; that such testimony, consisting of repeti-
tion of oral statements, is subject to imperfection through want
of understanding or accuracy of memory of the one narrating
same. The instruction was then balanced to comply substantially
with the so-called ''Greenleaf rule'' (see Scurlock v. City of
Boone, 142 Iowa 580, 583, 120 N. W. 313, and cases cited) by
saying that statements voluntarily and intelligently made, when
correctly understood, remembered, and testified to often lead
to satisfactory conclusions, and that the evidence should be
carefully considered and given such just and fair weight as the
jury deemed proper.

Appellants' answer alleged that appellee deliberately in-

jured himself. Reindl testified for appellants to a statement made by appellee, as follows:

"Q. What was said, if anything? A. He said he got his hand caught in the power take-off. Q. Did he say he caught it in it? A. He said he grabbed it and it wrapped his mitten in the power take-off. Q. That he grabbed it? A. Yes."

Gilbertson testified: "Johnson said that he grabbed ahold of the take-off." Appellee denied making the statement testified to by Reindl and Gilbertson. Instruction 10 referred to the foregoing testimony. It is claimed the instruction improperly and critically singled out the testimony of Reindl and Gilbertson and that testimony given for appellee of what others had said should have been included within the instruction.

This is a stock instruction on the weight to be given admissions of a party, which, when properly balanced, we have approved on several occasions. See Davis v. City of Dubuque, 209 Iowa 1324, 1331, 1332, 230 N. W. 421, and cases cited; State v. Friend, 210 Iowa 980, 988, 230 N. W. 425; Annotation 126 A. L. R. 66, 74, 75. See, also, Kuhn v. Kjose, 216 Iowa 36, 39, 248 N. W. 230; 31 C. J. S. 1178, section 382. The testimony of Reindl and Gilbertson was the only evidence of any admission by a party to the suit. The propriety of the instruction is apparent from the fact that Reindl first testified that appellee said he caught his hand in the shaft and the further fact that sane men do not ordinarily deliberately injure themselves. Other instructions fully informed the jury of the weight to be given the testimony generally.

VI. Appellee's counsel is charged with misconduct in argument in two respects. Appellee's counsel commented upon the absence of appellant Kinney from the trial and upon appellants' failure to contradict appellee's testimony that he told Dr. Kinney of his injury two or three days after it happened and that he was in need of money for medical attention and that thereupon Dr. Kinney discharged him. This testimony was very material. We think there was no abuse of discretion in the trial court's ruling that the argument was proper. It is legitimate to comment upon failure of the opposing party to

produce testimony within his control. Bettis v. Chicago, R. I. & P. R. Co., 131 Iowa 46, 48, 108 N. W. 103; Van Slyke v. Chicago, St. P. & K. C. R. Co., 80 Iowa 620, 624, 45 N. W. 396; Guin v. Mastrud, 206 Minn. 382, 288 N. W. 716, 718; M. & M. Securities Co. v. Dirnberger, 190 Minn. 57, 250 N. W. 801, 803; 64 C. J. 269 ff., sections 289, 290. Likewise, it is proper to comment on failure of a party to testify in explanation of testimony against him. 64 C. J. 276, section 293.

◼ Appellants' counsel in argument singled out at least three of the jurors, called each by name, and appealed to each. A portion of the argument follows: "In your hotel, Mr. Adams, if you have a food chopper in there and a man is foolish enough to get his * * * fingers in the place that he was not intended to get them * * * surely you should not be held responsible to an employee * * *." Several other personal appeals to individual jurors were made. In closing argument, appellee's counsel said: "I am not going to call you by name as was done by my predecessor. * * * our courts have said that that was improper." Appellants' counsel then interrupted, "I take exception to that; there isn't any such a rule," to which appellee's attorney replied, "Yes, there is." Appellants' counsel then responded: "I beg to differ with you." Appellee's counsel then said he had read in the Saturday Evening Post what a trickster lawyer does to ingratiate himself with the jurors; he bows, nods, and smiles through the trial, and when arguing calls them individually by name. Appellants' counsel objected but the court stated, "Proceed." Counsel for appellee then added that he would not undertake to influence a jury by anything along that line.

Appellants' counsel asked the court for no ruling or admonition to the jury because of the statement that it was improper to address jurors individually by name. See 64 C. J. 285, section 304. Appellants' counsel simply disputed this assertion. Appellee has cited decisions from other jurisdictions condemning the practice in argument of addressing jurors individually by name. See, also, 64 C. J. 249, 250, section 268. However, since appellants sought no ruling from the trial court on that portion of the argument, we do not feel called upon to settle the dispute.

Was the reference to the "trickster lawyer" such miscon-

duct as to require reversal? While we think that statement should have been omitted, we are not justified in reversing on that account. The trial court has a broad discretion in passing on the propriety of argument to the jury, with which we will not interfere except in a clear case of abuse of that discretion. Mitchell v. Mystic Coal Co., 189 Iowa 1018, 1023, 179 N. W. 428; Hein v. Waterloo, C. F. & N. R. Co., 180 Iowa 1225, 1232, 162 N. W. 772; Womack v. Horsley, 178 Iowa 1079, 1091, 152 N. W. 65; 5 C. J. S. 511, 512, section 1611; 3 Am. Jur. 534, section 973. Before a new trial will be granted for misconduct in argument it must appear that prejudice resulted or that a different result would have been probable but for such misconduct. Hannestad v. Chicago, M. & St. P. R. Co., 132 Iowa 232, 233, 109 N. W. 718; State v. Gulliver, 163 Iowa 123, 139, 142 N. W. 948; 5 C. J. S. 922, section 1713(b); 3 Am. Jur. 607, section 1059.

Appellee contends that appellants' counsel at different times during the trial bowed and smiled to the jurors and called some of them by name, apparently in an effort to gain their favor. The trial was hotly contested. Portions of the jury argument for appellants are called to our attention. A part of appellee's testimony and his entire case were branded as a "frame-up." It was intimated that appellee was "an unprincipled person." The trial court observed all that took place and the effect upon the jury of the arguments of opposing counsel. The matter was fully presented to the court upon motion for new trial and the verdict was approved. We are not justified in interfering.

VII. Finally, it is argued that the trial court should have directed a verdict for appellants. The principal contention is that negligence of appellants was not sufficiently shown. Appellants were obliged to exercise ordinary care to furnish reasonably safe machinery and appliances to their employees for the work expected of them. If the exercise of such care required them to cover this exposed shaft, to the end that it would be reasonably safe, then it was their duty to do so. Of course, they were not insurers of the safety of their employees. Rehard v. Miles, 227 Iowa 1290, 1295, 290 N. W. 702; Petersen v. McCarthy Imp. Co., 175 Iowa 85, 88, 156 N. W. 801; 35 Am. Jur.

605, section 176. The trial court fully and carefully so instructed. We cannot say that appellants, as a matter of law, performed their duty in this respect.

No reason is suggested why this shaft could not have been covered with the guard which appellants had. It would have been a simple task requiring but a few minutes time. The general tendency of the decisions is to hold the employer negligent in failing to guard dangerous appliances. 35 Am. Jur. 618, section 191. Our conclusion is supported by the following, among other, decisions: Lang v. Hedrick, 229 Iowa 766, 295 N. W. 107; Bell v. Brown, 214 Iowa 370, 239 N. W. 785; Oestereich v. Leslie, 212 Iowa 105, 234 N. W. 229; Buehner v. Creamery Package Co., 124 Iowa 445, 100 N. W. 345, 104 Am. St. Rep. 354. Lewis v. Cratty, 231 Iowa 1355, 4 N. W. 2d 259, is readily distinguishable. There the plaintiff had full knowledge of the unguarded shaft on a grain combine. Further, as pointed out in the opinion, that was not a master-and-servant case.

We have considered all contentions made and find no reversible error.—Affirmed.

WENNERSTRUM, C. J., and OLIVER, MITCHELL, MILLER, HALE, SAGER, and STIGER, JJ., concur.

BLISS, J., takes no part.