J. M. FLICK, Appellee, v. GLOBE MANUFACTURING COMPANY, Appellant.

MASTER AND SERVANT: Tools and Appliances—Personal Injury—
1. Negligence of Master. The master must exercise reasonable care to supply his servant with reasonably safe and suitable tools. *Held,* rule violated in furnishing the servant a small hand punch made of material such that it would ''chip off'' when struck.

PRINCIPLE APPLIED: A servant, employed both as a machinist and in general work, made tools only when directed by the superintendent. An ordinary hand punch had been made by the master, prior to the servant's employment, out of a file so

highly tempered that when it was struck, particles of steel were likely to ''chip off''. On two occasions, the last some two or three months before the injury in question, the servant had discovered the punch on the bench, and on both occasions had not only called the attention of the superintendent and foreman to its dangerous nature, but had thrown it into a box of scraps. The servant made a new one out of proper material and left it on the bench, and did not see the old tool again until the day he was injured. On the day that he was injured, he was told to hurry and take a ''chuck'' out of a drill press and to substitute a boring bit and to bore holes in a heavy iron plate. He and another carried the plate to the press, and, holding one edge of the plate on his knee, with his mind somewhat diverted thereby, he reached for a hammer and punch, and, adjusting the punch, hit it. A chip of steel flew off and injured the servant's eye. It was a common practice to remove a ''chuck'' in this manner. It was not the servant's duty to inspect and determine the fitness of tools. *Held*, the jury might properly find (a) that the punch was not a reasonably safe tool, (b) that the master was negligent, and (c) that the question of contributory negligence was for the jury.

**MASTER AND SERVANT: Personal Injury—Use of Defective Tool—**
2  **Contributory Negligence.** The question of contributory negligence shifts from the jury to the court only when the facts and circumstances are of such a manifest and decisive nature that the court can say that the minds of all reasonable men must at once unite in the conclusion that the injured party was lacking in due care for his own safety. *Held*, the use of a defective punch was not negligence *per se*.

PRINCIPLE APPLIED: See No. 1.

**JURY: Competency—Interest in Accident Insurance Company.** It is
3  allowable, on the trial of a personal injury action based on the negligence of a master, to ask the juror, on the *voir dire*, if he or any of his relatives are in any manner interested in any casualty insurance company.

**TRIAL: Instructions — Necessity and Subject-matter — Cautionary**
4  **Concerning Matters Occurring on Voir Dire.** The court may properly refuse instructions cautioning the jury against the effect of questions properly asked the jurors on *voir dire*. So *held* as to questions whether the jurors were interested in any casualty insurance company.

**MASTER AND SERVANT: Assumption of Risk—Proper Pleading to**
5  **Raise Issue.** The issue of assumption of risk ''incident to the

master's negligence'' is not raised by a pleading alleging that the servant, ''knowing the kind and manner of work he was expected to do, undertook and continued in such work and assumed all the risks and dangers incident thereto''. Such allegation is worthless legal verbiage when the pleading contains a general denial.

EVIDENCE: Mortuary Tables — Expectancy of Life — Statutory
6 Tables. The mortality and annuity table provided for in the Supplement to the Code, 1907, page 316 (Page 2152-a, Sup. Code, 1913) is admissible in any case when the ''expectancy of life'' becomes material.

*Appeal from Dallas District Court.*—HON. W. H. FAHEY, Judge.

WEDNESDAY, NOVEMBER 24, 1915.

ACTION at law to recover damages for personal injury. Verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*Giddings & Blake* and *Cummins, Hume & Bradshaw,* for appellant.

*H. S. Dugan* and *White & Clarke,* for appellee.

WEAVER, J.—The defendant operates a factory for the manufacture of washing machines at Perry, Iowa, and on May 24, 1913, and for some time prior thereto, the plaintiff was an employee in the factory. On the day named, as he alleges, he was directed by his superintendent to drive a chuck out of a drill press and place therein a boring bar. Being urged by the superintendent to hurry and make the change quickly, and assuming that the tools furnished him for that purpose were safe, he picked up a punch which was provided at that place and placed the same in position to drive the chuck from the spindle. In that position, he struck the punch with a hammer, with the result that a scale or piece of the punch was broken off and struck him in the eye, causing him a serious injury. He further alleges the fact to be that the punch was not of a suitable kind, character, material

or temper for such use, and that of this fact the defendant had notice and knowledge. He specifies the alleged negligence of the defendant as follows:

"That defendant itself manufactured the punch from an old file which was brittle and so tempered that when struck with a hammer it was likely to give off small particles of steel, and, it was, therefore, unfit for the use for which it was furnished; that due care was not used by defendant in allowing the punch to be used in its factory; and that defendant negligently failed to furnish the plaintiff with fit and proper tools and appliances with which to perform the work required of him, and that he suffered injury as alleged without fault on his part."

Answering this claim, the defendant admits that plaintiff was employed in its shops at the time in question, and alleges that he was employed as a machinist and repair man, in which capacity it was his duty to select, make, provide and repair all small tools, including such implements as the punch of which he complains. It further admits that plaintiff, in the course of such service, undertook to remove a drill from an iron driving shaft by driving or forcing such drill from its position with a punch and hammer, and that, in so doing, a portion of the punch was chipped off, flying into plaintiff's eye, causing him pain and suffering, and that the sight of that eye has since been partially or wholly lost; but denies all charges of negligence on its part. In a second count of the answer, defendant alleges that plaintiff entered the employment knowing its dangers, "and assumed all risks and dangers incident thereto". In a third count, it is alleged that defendant provided and furnished, for plaintiff's use, a punch made of soft steel, which was entirely safe for use in such work; that it was plaintiff's duty to make use of such tool instead of the one which he did use; and that, if injured, as alleged by him, or if his injury was the result of any negligence on the part of defendant, plaintiff contributed

thereto by his own negligence and is not entitled to recover damages.

The admissions made in the answer preclude the necessity of discussion upon the fact that plaintiff was injured while in the performance of his duty to his employer, and leave for our consideration the questions of negligence and contributory negligence and such exceptions as have been preserved and argued upon rulings of the court below in the course of the trial.

I. Is there evidence in the record upon which the jury could properly charge the defendant with negligence?

Giving the evidence its most favorable construction in support of the verdict, it tends to show that, while plaintiff was engaged for service as a tool-maker and repair man, his actual service was, to a large extent, in the general work of the factory, more particularly in metal work, and that this was done because of the press of work other than tool making and repairing. When he did make tools, it was at the direction of the superintendent or foreman in charge, and not upon his own motion. On the day of plaintiff's injuries, he was engaged in making washing machine parts until he was called to work at the drill press. The punch or drift in question had been made in the shop from a file, prior to plaintiff's employment therein. Several months before his injury, he had discovered the tool and saw that it was made from a file, and, believing it to be dangerous, had called the attention of the foreman and superintendent to it, and to get it out of the way, he threw it into a box of old scrap. Sometime thereafter, having occasion to use a drift, he found the same tool lying on the bench and again threw it away among the old scrap and made another of proper material, which he left on or near the drill. He called the attention of his superior to the unfitness of the tool and thereafter saw nothing more of it, until he discovered that it was the one from which he had received the injury of which he

1. MASTER AND SERVANT: tools and appliances: personal injury: negligence of master.

now complains. That the drift was a proper one for such use, or made from suitable material, is not asserted by any witness except perhaps one. The duty of the employer to use reasonable care to supply his workmen with reasonably safe and suitable tools and appliances is, of course, elementary in the law of master and servant. It follows, we think, without further discussion at this point, that, under the case as made by the plaintiff, the jury could properly find that the punch or drift was not a reasonably safe tool for the use for which it was supplied, and that the defendant had notice or knowledge thereof in reasonable time to have withdrawn it from use or to furnish another of suitable kind and character for the work of the factory.

II. The second, and perhaps closer, question is upon the issue of contributory negligence. Plaintiff admits that he knew of the defective character of the drift, and if, in using it on the occasion of his injury, he knew or recognized the drift as the one which he had condemned and thrown away, or if, in the exercise of reasonable care, he ought to have recognized it, then he was negligent, and, under the law, is not entitled to recover. But we are quite satisfied that this question cannot be disposed of peremptorily as a matter of law. Again taking the testimony in his behalf, it tends to show that the last time plaintiff saw the drift before the occasion of his injury was 2 or 3 months prior thereto, when he threw it away the second time, and we cannot say that he was in duty bound to anticipate that it was likely to reappear in use and be careful every time he had occasion to use a drift to scrutinize it and see if it was not the one which had been discarded. He had no occasion to use the drill press or drift for a considerable period before the day of his injury. He was then desiring to drill a hole or holes through a heavy iron plate and was urged by the superintendent to do it quickly, as the drill press was much in use by other workmen. Aided by another employee, he

2. MASTER AND SERVANT: personal injury: use of defective tool: contributory negligence.

carried the iron plate to the drill and sat down, holding one edge of the plate on his knees, while he undertook to prepare the press to receive it. Reaching to the nearby table or bench on which the needed tools were usually kept, he picked up the hammer and drift to remove the chuck and substitute the boring bar for the work to be done. Without waiting to examine the tools closely, and assuming that they were of the proper character, he put the drift in proper position and struck it with the hammer, thus bringing about his injury; and it was only after such injury that he saw and realized the identity of the tool as the one which had been made from a file. It was the common practice in the factory to release the chuck by the use of a drift, striking it with a hammer or wrench or such striking instrument as might be convenient. Considering the fact that the drift had been before cast by him into the scrap heap; that he had not thereafter seen it or known that it had been restored to use; that, at the request of his superior, he was attempting to make the change in the drill press in haste, and that his attention was to some extent diverted in assisting to hold the heavy iron plate while the change was being effected, we think it does not present a case where the minds of all reasonable men must at once unite in the conclusion that he was lacking in due care for his own safety. It follows therefrom that the question of contributory negligence, like that of defendant's negligence, presented an issue for the triers of fact. Nor is that conclusion negatived by the fact that plaintiff was a tool maker and repairer in the factory. It is nowhere shown that he was charged with the duty of inspecting the tools and determining their fitness. He himself swears that he made and repaired tools only upon the direction of the managing officers, and it is admitted that, for a part of the time at least, he was engaged in rendering assistance in other departments of the service; and we can see no good reason why he had not the right, as had other employees, to rely upon the company's performance of its duty to exercise reasonable care to supply him with proper

tools and appliances, unless, of course, the jury should find, as already suggested, that he knew, or ought to have known, that the drift which he undertook to use was defective or unsafe.

III. In examining the individual jurors called into the box concerning their qualifications to serve in that capacity, the plaintiff was permitted to ask each of them whether he

3. JURY: compe-
tency: inter-
est in accident
insurance
company.

was a stockholder in any casualty insurance company or connected in any way with such company or whether any of his relations were so employed or interested; and of this the

defendant complains, because counsel say the jury were thus informed, or must have inferred, that defendant was protected against liability by insurance. Although making this point in the assignment of errors, defendant, in argument, admits that such inquiries have been held competent. See *Foley v. Cudahy Packing Co.*, 119 Iowa 246; *Brusseau v. Lower Brick Co.*, 133 Iowa 245; *Ruby v. Chicago, M. & St. P. R. Co.*, 150 Iowa 128; *Faber v. C. Reiss Coal Co.*, (Wis.) 102 N. W. 1049, and *Spoonick v. Backus-Brooks Co.* (Minn.), 94 N. W. 1079; although the fact that the defendant is so insured is not competent evidence to go to the jury on the

4. TRIAL: instruc-
tions: neces-
sity and sub-
ject-matter:
cautionary con-
cerning mat-
ters occurring
on *voir dire.*

trial of the issues in the case. It is said, however, that, this examination of the jurors having been permitted, the court should have instructed the jury that there was no evidence before them of such insurance by

defendant, and that it was error to refuse so to charge at defendant's request. We find no error in such refusal. Many lawyers are in the habit of wandering far afield in the examination of jurors upon *voir dire* and quizzing them upon their relationships, business connections, financial interests and not infrequently upon their political, religious and social affiliations; and to require the court to take notice of all these things and give special instructions thereon would only serve to obscure the issues being tried. Moreover, it being true,

as counsel say, that there was no evidence whatever that defendant was in truth carrying any insurance, the court should not prolong its charge by instructing upon a subject which every juror having sufficient intelligence to be allowed to run at large knows is not in the case. The jurors are sworn to try the case upon the evidence, and they are frequently admonished in the charge that their verdict must be returned upon the evidence and the evidence alone, and we must assume that they give heed to rules so laid down.

IV. It is argued that, even if negligence of the defendant is admitted or proved, it does not appear to have been the proximate cause of plaintiff's injury, but that his own failure to do his duty, with reference to the drift and its use, must be held the sole proximate cause. This is only stating in other words the same question we have already considered —whether the record shows the plaintiff chargeable with contributory negligence as a matter of law. It is unnecessary to go over that issue again. For the reasons stated, we hold the question to have been one for the jury.

V. Something is said in argument about assumption of risk. Without here considering the effect of the recent statute, Code Sup. 1913, Sec. 4999-a3, it is sufficient now to say that

**5. Master and servant: assumption of risk: proper pleading to raise issue.** there is in this case no plea that plaintiff assumed the risk of defendant's negligence in the respect complained of. The plea, as made, is that plaintiff, knowing the kind and manner of work he was expected to do, "undertook and continued *in such work and employment and assumed all the risks and dangers incident thereto*". This, as we have repeatedly held, raises no other issue than is raised by a mere denial. It has no reference whatever to an assumption of the risks created by the employer's negligence. See *Martin v. Des Moines Edison Light Co.*, 131 Iowa 724, 734, and the cases there cited, as well as others in which that precedent has been followed.

VI. Of the many exceptions taken to the charge of the court to the jury, practically all are governed by the conclusions we have already announced, and we need consider them no further than to say that they contain no erroneous statements of the law.

VII. Further exception is taken to the admission in evidence of the mortality and annuity table found in the Code Supplement of 1907, page 316, indicating that the expectancy of life of the plaintiff at the age of 29 is a fraction over 30 years, it being argued that the statute prescribed such tables for the use of courts and appraisers in computing the value of life annuities or in assessing a collateral inheritance tax, and nothing is said about their use in personal injury actions. The objection is over-technical. The statute authorizing such tables expressly provides that they shall show, among other things, "the average expectancy of life", and there is no sound reason why, when the average expectancy of life at a given age has been thus shown, it should not be admissible in any case and upon any issue where a right in controversy turns in any degree upon the expectancy of life of an individual whose present age is known. It is too well established to admit of debate that standard life tables found in law works, and such as are recognized as authoritative by actuaries and by dealers in life insurance and annuities in general, are admissible in evidence, and no court requires the party offering such evidence to first prove by experts the authenticity or correctness of such tables. Indeed, it was probably to the good fortune of the defendant that plaintiff elected to rely upon the statutory table; for, had he been driven by the objection to offer instead the table of mortality based on American experience, it would have found the expectancy of plaintiff's life to have been increased from 30 years to 36 years. 20 Am. & Eng. Ency. Law, 2d Ed., p. 885.

An examination of the record reveals no error to the

6. EVIDENCE: mortuary tables; expectancy of life: statutory tables.

prejudice of the defendant and the judgment of the district court is therefore—*Affirmed.*

DEEMER, C. J., EVANS and PRESTON, JJ., concur.