CARL DEGNER, Appellant, v. GEORGE D. ANDERSON, Appellee.

No. 41053.

DECEMBER 16, 1931.

Charles E. Pendleton, for appellant.

Whitney, Whitney & Stern, for appellee.

GRIMM, J.—The defendant (appellee) in this case operates a farm in northwestern Iowa. He employed the plaintiff (appellant) in December, 1929, as a farm hand. On or about the 20th day of September, 1930, the plaintiff and the defendant were engaged in operating, on defendant's farm, what is known as a Thieman ensilage cutter. The plaintiff was operating the cutter and the defendant was driving the wagon which caught the ensilage as it passed from the machine. The plaintiff had operated this machine for thirty or forty days and had, during that time, cut approximately forty acres of corn with the machine. As a part of this machine, there is what is known as the gathering or carrying chain. The power for operating this gathering chain is furnished by the wheels of the machine as it is drawn by horses or tractors.

The cutting machinery is operated by a Ford motor which is carried on the machine. In other words, the gathering chain and the cutting knives are driven by independent sources of power, the chains being operated by the draft of the machine and the knives by the power of the Ford motor. The operation of the chain is thrown out of gear by a gear-shift lever, the exact location of which on the machine does not appear in the record; but at all events apparently the driver of the horses as he sits on the machine may throw the chain in or out of gear by operating the gear-shift lever. The operation of the knives being wholly independent of the movement of the chain, the knives. if the motor is in action, continue to operate under the power of the Ford motor whether the chain is in operation or not.

On the day of the accident in question, the chain had, on two or three occasions, come off the sprockets on which it operated and the plaintiff had stopped the machine and replaced it. On one occasion, he did something towards tightening the chain so it would not come off so readily.

Immediately before the accident, the plaintiff had driven to the end of one of the rows. By the use of the gear-shift lever, he threw the chain out of gear and proceeded to drive around the end of the corn rows. After he had lined his team for the next row to be cut and while the horses were moving and the chain was still out of gear, the plaintiff reached over with his hand and took a grip upon the chain and shook it, as he says, to ascertain whether he had sufficiently tightened the machinery so that the chain would not come off. As he seized the chain and shook it, it suddenly began to revolve and he lost the point of one of his fingers by catching the same in the chain machinery.

At the close of the evidence for the plaintiff, upon motion of the defendant, the court directed a verdict for the defendant, and the plaintiff appeals.

I. The principles of law involved in this controversy are quite familiar and well settled. The difficulty, if any, arises from their application to the facts in this particular case.

It is the general rule that a master is required to exercise reasonable care to furnish suitable and safe tools, appliances and instrumentalities for use in the work which the servant is expected to perform. Swaim v. Chicago, R. I. & P. R. Co., 187 Iowa 466 (L. C. 477).

If the machinery became out of repair so as to render it unsafe for use and the defendant had knowledge of this fact for such a length of time before the injury that he could have remedied the defect, he is liable for the injury resulting from the defect, unless it is shown, under the rules of law, that the plaintiff had assumed the added hazard and had waived the negligence of the defendant in permitting the hazard. Kenyon v. Illinois Central R. Co., 187 Iowa 277 (L. C. 283).

There is here neither claim nor proof that there was any promise of repair or any assumption of the hazard after the discovery of any defect in the machine and promise to remedy the same. It is fundamental that the burden is on the plaintiff to prove that the defendant was negligent. In this case, he must prove that the machinery was defective and that the defect was the proximate cause of the injury and that the employer had knowledge, or by the exercise of ordinary care might have known, of the defect.

There is here no contention that the machine was not of a standard type and in general use. The claim is that the machine was defective. The testimony is directed to prove that the gear-shift clutch which controlled the chain was so defective that it would fly into gear, thus starting the gathering chain to move.

The plaintiff, at the time of the accident, was twenty-four years of age and had worked as a farm hand for twelve years. He had been working for the defendant almost a year. He had operated this particular machine in the cutting of forty acres of corn for ensilage purposes, covering a period of about forty days. On cross-examination, he said:

"Q. How many times had the chain come off that morning? A. Twice. Q. Before the accident, when did it come off the first time? A. Just shortly before I got injured. * * * I got off the machine and put the chain on and then started up again. About five or six minutes the chain came off again. * * * Q. About how many times previous to that time had you thrown the machine out of gear and it came back in without you putting it in? A. Not any. Q. That was the first and only time? A. Yes. Q. Had you ever seen it come out of gear before? A. No, I hadn't. Q. Then you ran the ensilage cutter that fall all of the time? A. Yes. Q. And that is the only time it was thrown out of gear, when it went into gear of its accord,

isn't it? A. Yes. * * * Q. You told him (the defendant) the clutch had been in bad shape, didn't you? A. No. Q. You did not tell him that? A. No, because it wasn't. Q. Previous to that morning it was in good shape? That is the only trouble you had with the clutch during that 30 or 40 days running the machine, wasn't it? A. Yes."

Here, then, is the plaintiff's own story, from which it clearly appears that while the chain had come off once or twice prior to the accident, the gear-shifting device had never, prior to the time of the accident, disclosed any defect. In other words, prior to the accident, the chain-driving apparatus had never before slipped into gear of its own accord. It is this gear-shifting device which the plaintiff claims was negligently maintained by the defendant. For about forty days, the plaintiff had operated this machine and it had never shown any evidence of such defect. Likewise, it is apparent from the plaintiff's own testimony that he had never made any complaint to the defendant about any alleged defect in the gear-shifting device.

The plaintiff, on direct examination, testified that the defendant immediately after the accident said "he knew somebody would get hurt if it wasn't fixed." On cross-examination, in reference to this particular testimony, the following appears in the record:

"Q. That clutch had never gone in gear of its own accord before? A. No. Q. Mr. Anderson said to you afterwards and after the accident that he knew somebody would get hurt because of the condition the clutch was in? A. He didn't say the condition of the clutch, he said he knew someone would get hurt."

Manifestly, as the plaintiff had operated the machine for about forty days and had found no trouble with the gear-shift clutch and nothing had been said by the plaintiff to the defendant on the subject, the only reasonable inference is that whatever the defendant said on that occasion had reference to the gathering chain or the portions of the machine which were afterwards repaired, rather than to the gear-shift clutch in question.

In this connection, it appears that a few days after the accident, the machine was overhauled and some repairs were made thereto. There is confusion in the record by reason of

the fact that the witnesses were apparently speaking, part of the time, at least, about a set of gears in another part of the machine, other than the portion which operated the gathering chain. Plaintiff's own testimony, given by an expert machinist, shows that "the gear regulating the shift of the carrying chain was not fixed at the time he overhauled the ensilage cutter. * * * I worked mostly on overhauling the motor on the ensilage cutter."

This question and answer appear in the record:

"Q. You folks didn't look at the clutch that day, did you? A. Not the clutch."

This has reference to the day when the machine was being overhauled and repaired.

It is without conflict in the evidence that, when the machine was being examined by these mechanics who testified on behalf of the plaintiff, when the gear-shifting lever was thrown so as to put the chain out of gear, the revolving parts thus disengaged did not touch. It is the contention made on behalf of the plaintiff that the distance between these revolving parts should have been greater, but the fact remains that so long as they did not touch, the chain remained out of gear and out of motion.

There is some evidence in the record to the effect that sometime after the accident, and the time is not shown, some experiments were made with the machine by one of the witnesses who testified to the effect that the mechanism to operate the chain would sometimes throw itself in gear. On the other hand, all of the plaintiff's witnesses testified that while overhauling the machine immediately after the accident, no change was made by way of repairs, resetting or otherwise, on any of those parts of the machine which had to do with the gear-shifting clutch device that threw the chain in or out of gear.

It thus appears upon the whole record that, assuming, for the sake of the argument, that the chain-driving machinery automatically went into gear, it never had done so before. It is conceded that when the chain-driving machinery was thrown out of gear, the revolving parts did not touch, and manifestly, not touching, they would not automatically be thrown into gear.

All of the plaintiff's witnesses show that when the defendant caused the machine to be overhauled immediately after the

accident, nothing was found and no repairs were made upon the identical portion of the machine which the plaintiff claims was negligently maintained. The repairs were all made upon the motor and the gears and devices which operated the knives. Whatever appears in the record to the effect that sometime after the accident the machine would throw itself into gear is not connected with or applied to any alleged defect in the gear-shifting clutch device concerning which the negligence is charged in this case.

It conclusively appears from the plaintiff's own testimony that immediately before the accident, while the machine was in motion as drawn by the horses, and while the chain was at rest because the clutch had been thrown out, the plaintiff reached over and seized hold of the chain, and shook it, as he says, to ascertain whether there was still remaining too much slack in the chain. Immediately upon the chain's being thus seized and shaken by the plaintiff, it began to move, and the injury immediately resulted from said movement.

It is significant that while the chain was thrown out of gear when the machine finished gathering up the corn row, the machine traveled in the making of the turn and then in the opposite direction without anything happening until the plaintiff reached over, seized hold of the chain, and shook it.

Whether in reaching for the chain the plaintiff unintentionally struck the gear-shift lever and moved it, or whether by the force of the shaking which the plaintiff gave the chain the machine was thrown into gear, does not appear.

After a careful examination of the entire record and the consideration of all the claims of the appellant, we find that the lower court correctly directed a verdict for the defendant. Bell v. Brown, 214 Iowa ——, is distinguishable on the facts.

It follows that the cause must be, and is, affirmed.

All justices concur.