DARYL BELL, Appellant, v. WALTER S. BROWN, Appellee.

No. 41004.

DECEMBER 16, 1931.

REHEARING DENIED APRIL 8, 1932.

Livingston & Eicher, for appellee.

Ralph H. Munro, for appellant.

WAGNER, J.—The defendant is a farmer, owning and operating a farm in Washington County. Beginning about March 1, 1928, until the time of the accident hereinafter referred to, the plaintiff was employed by the defendant to render service as a farm hand. The accident occurred on July 17, 1928, while the plaintiff and the defendant were engaged in cutting oats. The binder, when in operation, was pulled by power from a tractor connected therewith. The plaintiff was operating the tractor, the defendant the binder. The tractor, as originally constructed, had the usual device for disengaging the power and throwing

it into neutral. In addition thereto, a former farm hand of the defendant's, in 1926, constructed out of material found on the farm, what plaintiff denominates a "makeshift contrivance," which some of the witnesses call a "hand clutch," and which was attached to the clutch or foot pedal on the tractor, so that, by pulling backward on the top thereof, the power would be disengaged. This "hand clutch" could be operated by the man upon the binder by pulling on a rope attached thereto and leading therefrom to the seat on the binder, as readily as by a pull thereon without the aid of the rope by the operator of the tractor. The various farm hands employed by the defendant, all of whom were witnesses in the case, testified that they had used this contrivance for the purpose of disengaging the power or throwing the tractor out of gear. Neither this contrivance nor one of a similar nature was a part of the tractor as originally constructed. It consists of two pieces of iron about an inch in width and one sixteenth of an inch in thickness. The two pieces are joined by a bolt which serves the purpose of a hinge. The lower portion thereof was attached to the clutch or foot pedal on the tractor in such a manner that a pull backward would cause the top portion to move slightly to the rear, which had the effect of throwing out the clutch and disengaging the power. It is so constructed that when the top portion was pulled in a position more than parallel with the lower portion, the tractor was then out of gear. When pulled past this parallel position, it was in a position which the witnesses describe as "past center." The defendant testified: "It could be pulled about half an inch past center I would judge, yes. If the vibration of the engine would move that half an inch then the spring would pull it into gear." The plaintiff testified: "There was nothing to hold it past center. There were no notches in the lever." The plaintiff testified that the regular gear shift, which constituted a portion of the original construction of the tractor, was not in good working order; "when you were driving this tractor and it was in gear you couldn't throw it in and out of gear every time. There was something worn about the parts so that you couldn't throw it far enough out of gear to disengage it. Mr. Brown said that he was going to have that tractor fixed; he knew about it. We had talked about it. He said he was going to see some mechanic and see if he couldn't get those gears fixed so as to throw the

gear back in neutral again.'' If the power was disengaged by either of the methods hereinbefore mentioned, the tractor would remain stationary, but the motor would continue to run. While cutting oats ,there were times when the sickle bar became clogged by the gathering of cornstalks thereon, which were removed by either the plaintiff or the defendant,—sometimes by one and sometimes by the other. Just before the accident, the plaintiff observed that the sickle bar was clogged by a cornstalk. He testified, in substance, that, when he observed this condition, he tried to throw the tractor out of gear by the use of the regular gear shift, which would not work, and that he then pulled this ''hand clutch'' past center, which stopped the forward move-ment, and he got off the tractor, removed the cornstalk from the sickle bar, and turned around, when the tractor, having been thrown into gear by its vibrations from the running motor, moved forward, and he was caught in the foot by the sickle, which was in operation, and in this manner received a serious and permanent injury.

In his petition he alleges, in substance, that the defendant was negligent in that he failed to furnish a reasonably safe machine and appliances thereto, with which to do the work, and in that the defendant negligently failed to throw the binder out of gear at the time in question, which negligence was the proxi-mate cause of the injury. The defendant answered by a general denial, and affirmatively pleaded assumption of the risk by the plaintiff.

At the close of all of the evidence, the court sustained defendant's motion for a directed verdict in his favor. The grounds of said motion epitomized are as follows: (1) That the plaintiff was guilty of contributory negligence; (2) that plaintiff's injury was sustained outside the line of his duties; (3) that there was no negligence on the part of the defendant; (4) that the negligence, if any, on the part of the defendant was not the proximate cause of plaintiff's injury; (5) that the evidence affirmatively shows that plaintiff assumed the risk; (6) that under all of the evidence the court could not allow a verdict in plaintiff's favor to stand. The court sustained this motion generally, and therefore we must consider each one of said grounds; for, if any ground of said motion is good, then the action of the court must be affirmed, but if all of said

374

grounds are without merit, then the action of the trial court must be reversed.

■ There is no merit in the first ground of the motion hereinbefore set out, to wit, contributory negligence by the plaintiff. It is well settled by this court that contributory negligence in an action brought by an employee or servant against his employer or master for damages caused by the negligence of the employer is not a complete defense, but may be pleaded by the defendant only in mitigation of damages. See Section 11210, Code, 1927; Potier v. Winifred Coal Company, 192 Iowa 1280; Hunt v. Des Moines City Railway Company, 188 Iowa 1068; Oestereich v. Leslie, 212 Iowa 105. This question is fully discussed in the Oestereich case, and repetition of what we there said is unnecessary.

■ The appellee makes some contention that the injury received by plaintiff was not received in the line of his duty or within the scope of his employment. It is true that the record does not show that the defendant had by word of mouth instructed the plaintiff to remove the rubbish from the sickle bar, but he was employed as a farm hand for general purposes. At the time in question, he was operating the tractor. The rubbish gathered upon the sickle bar at various times, and sometimes was removed by the plaintiff and sometimes by the defendant. The defendant testified, in substance, that he does not remember telling that whoever saw the obstruction on the sickle bar first should get down and remove it, but that he (the plaintiff) got in there at times. ''There wasn't any use of my getting off because he was there before I could get off the binder and go in there.'' ''At this time Daryl (plaintiff) stopped the tractor and went in there by himself. Yes, sir, he had done that before. When I was cutting he would get off and take those stalks off. * * * I didn't tell him to, but he got to coming in there himself. He was working for me and I was paying him for his time and he was working under my direction.'' It is elementary that, in order for a servant to be entitled to recover from his employer for injury received in a case like the one at bar, he must at the time have been engaged in the line of his duty, or, otherwise stated, within the scope of his employment; but the scope of a servant's duties is to be defined by what he was employed to perform and by what, with knowledge and approval of his mas-

ter, he actually did perform, rather than by the mere verbal designation of what service he was to render. See 39 C. J. 378. It is quite apparent from the record that the court could not say, as a matter of law, that, at the time of the accident, the plaintiff was not engaged within the scope of his employment as a farm hand. Therefore, there is no merit in the second ground of the aforesaid motion.

We will consider the third and fourth grounds of the aforesaid motion together. It is the positive duty of a master or employer to furnish his servant or employee with reasonably safe tools, machinery, instrumentalities, or appliances with which to do the work. See Oestereich v. Leslie, 212 Iowa 105. The defendant knew that the tractor, as originally constructed, was provided with a gear shift whereby the power could be disengaged and it thrown into neutral, so that the tractor would remain stationary while the motor was running. The jury could find, from the testimony, that he had been informed that the tractor, in this respect, was out of order and that he had promised to repair it. Relative to the "makeshift contrivance" or "hand clutch," the jury, from the evidence and fair inferences to be drawn therefrom, could find that he knew that the operators of the tractor—his various farm hands, including the plaintiff—had used this device for disengaging the power. Can it be said, as a matter of law, that this contrivance upon the tractor, constructed by one of his farm hands,—one having no special mechanical ability,— and used and intended to be used to throw the tractor out of gear, constituted a fulfillment of his positive duty to furnish his employee with a reasonably safe instrumentality or appliance attached to the tractor which was to be used in doing the work? We think not. See Dunn v. John L. Roper Lumber Company, (N. C.) 90 S. E. 18. The employee who placed this contrivance upon the tractor testified:

"I made this device, but I wasn't the inventor of it. I don't know who did invent it. I have seen several of them on tractors just similar to that. Probably wasn't quite so rudely (crudely?) constructed. I made it of my own accord. Mr. Brown and I had talked about a clutch release and I just made it. He didn't ask me to do it, to make it, or didn't tell me not to. We never talked about making this one. We didn't talk

about making any. I don't know where I got the material. I found it out there on Brown's farm. I never had any mechanical experience, only in building such things as that. I was a farmer before I went to work there, never done anything but farming. If I could have got wire I would have used it. I went out there and hunted up some pieces of iron and made that contrivance and put it on that tractor. * * * I have driven anyway three or four different tractors. As I said before, contrivances like that, maybe not quite so crude a piece of machinery as that, were on tractors I used, but then it was on the same plan. * * * I couldn't tell you where I got the model. It was on the Elmer Steel tractor just like it as near as I could make it with the tools I had."

As hereinbefore stated, the plaintiff testified: "There was nothing to hold it past center. There were no notches in the lever." And the defendant testified: "It could be pulled about half an inch past center I would judge, yes. If the vibration of the engine would move that half an inch then the spring would pull it into gear." Certainly, with this testimony in the record, it was a question for the jury to determine as to whether or not this device constituted a reasonably safe appliance or instrumentality for the purpose of throwing the tractor out of gear. The question as to whether or not the defendant had complied with the positive duty which the law imposes upon him in furnishing reasonably safe machinery, instrumentalities, and appliances for the work was for the determination of the jury.

The appellant further alleges and claims that the defendant was negligent, at the time in question, in that he failed to throw the binder out of gear. The duty rested upon the defendant in this respect to exercise ordinary care, that is, such care as an ordinarily careful and prudent person under the same circumstances would have exercised. With the knowledge which from the evidence and the fair inferences to be drawn therefrom the jury could find that he had as to the manner in which the power was disengaged, and the knowledge which the jury could find that he had, that there were no notches in the lever to hold it past center, and the knowledge which he had, as disclosed by his own testimony, that, "if the vibration of the engine would move that half an inch, then the spring would pull it into gear,"

the question as to whether or not he was negligent in not throwing the binder out of gear at the time in question was one for the determination of the jury.

 Could the jury properly find from the evidence that negligence of the defendant relative to the "makeshift contrivance" or "hand clutch," or negligence for failure to throw the binder out of gear at the time in question, was the proximate cause of plaintiff's injury? We answer in the affirmative. The question of proximate cause is usually one for the jury. See Swaim v. Chicago, Rock Island & Pacific Railway Company, 187 Iowa 466; Cresswell v. Wainwright, 154 Iowa 167; Sergeant v. Challis, 213 Iowa 57. The rule as to whether negligence claimed to be the proximate cause of an injury is a question which should be submitted to the jury is the same as applied to any other question of fact involved in the case. If reasonable minds, having before them all of the facts upon the question, could reach but one conclusion, the question then becomes one for the court; but if, under the proven or admitted facts, different minds might reasonably reach different conclusions, the question is then one of fact for the determination of the jury. See Smith v. City of Hamburg, 212 Iowa 1022; Sergeant v. Challis, 213 Iowa 57. The question as to whether negligence of the defendant in the respects mentioned was the proximate cause of plaintiff's injury was for the determination of the jury. It may be well to restate at this point that, if the jury should find that the plaintiff was guilty of contributory negligence, this does not constitute a complete defense to his cause of action.

 Did the plaintiff assume the risk arising because of the negligence, if any, of the defendant in failing to provide reasonably safe machinery and appliances for the doing of the work? Could the court properly say, as a matter of law, that the plaintiff assumed this risk? We answer in the negative. See Section 1495, Code, 1927; Correll v. Williams & Hunting Co., 173 Iowa 571; Parkhill v. Bekin's Van & Storage Company, 169 Iowa 455; Woodworth v. Iowa Central Railway Company, 170 Iowa 697; Edgren v. Scandia Coal Company, 171 Iowa 459; Boone v. Lohr, 172 Iowa 440; Flick v. Globe Manufacturing Company, 172 Iowa 561; Peterson v. McCarthy Imp. Co., 175 Iowa 85; Nodland v. Kreutzer and Wasem, 184 Iowa 476. Section 1495, Code, 1927, provides:

"In all cases where the property, works, machinery, or appliances of an employer are defective or out of repair, and where it is the duty of the employer from the character of the place, work, machinery, or appliances to furnish reasonably safe machinery, appliances, or place to work, the employee shall not be deemed to have assumed the risk; by continuing in the prosecution of the work, growing out of any defect as aforesaid, of which the employee may have had knowledge when the employer had knowledge of such defect, except when in the usual and ordinary course of his employment it is the duty of such employee to make the repairs, or remedy the defects. Nor shall the employee under such conditions be deemed to have waived the negligence, if any, unless the danger be imminent and to such extent that a reasonably prudent person would not have continued in the prosecution of the work; but this statute shall not be construed so as to include such risks as are incident to the employment; and no contract which restricts liability hereunder shall be legal or binding."

The proper construction to be placed upon this statute is clearly announced in the well considered case of Correll v. Williams & Hunting Co., 173 Iowa, 571, and the other cases cited at this point. Repetition of what we there said is unnecessary. The plaintiff testified that the defendant had promised to repair the gear shift device which was a part of the original construction of the tractor. Therefore, the jury could properly find that, within the meaning of the aforesaid statute, the defendant had knowledge of said claimed defect.

From the description of the "makeshift contrivance" or "hand clutch" as hereinbefore stated, and from the testimony of the defendant that if the vibration of the engine would move this device a half inch the spring would pull it into gear, and from other facts and circumstances disclosed by the evidence, the jury could properly find that, within the meaning of the aforesaid statute, the defendant had knowledge that said appliance was defective and insufficient as a reasonably safe device for the purpose for which it was constructed and used. There is no claim by the defendant that it was the duty of the plaintiff, within the course of his employment, to make repairs. Therefore, the question of assumption of risk was not one of law for

the court, but for the determination of the jury, under proper instructions to be given by the court.

It is apparent from the foregoing that, if the jury should return a verdict for the plaintiff, the court could properly allow the verdict to stand, and therefore there is no merit in the sixth ground of the aforesaid motion.

Degner v. Anderson, 213 Iowa 588, adopted at this same sitting of the court, is clearly distinguishable on the facts.

For the foregoing reasons, the judgment of the trial court is reversed and the cause remanded for a new trial.—Reversed.

STEVENS, DE GRAFF, MORLING, and KINDIG, JJ., concur.