LEO LANG, Appellant, v. FRANK HEDRICK, Appellee.

No. 45222.

DECEMBER 10, 1940.

REHEARING DENIED MARCH 14, 1941.

John J. Kintzinger and John L. Duffy, for appellant.

Czizek & Czizek, for appellee.

BLISS, J.—Plaintiff alleged that defendant was the owner and operator of a farm in Dubuque county, Iowa, and that he owned and operated a woodcutting machine as a part of his equipment in carrying on his business of farming. Plaintiff was a man 46 years old and was operating a truck farm in the same neighborhood. On or about September 22, 1938, he was temporarily employed by the defendant to help him saw cordwood into one-foot lengths. On that day, he alleges a stick of wood which he was holding to the teeth of the saw was caught and thrown upward, thereby bringing his right hand into contact with the teeth and severely cutting it. As grounds of negligence, he alleged (1) that defendant was negligent in failing

768

to have any proper guard or safety appliances on said saw; (2) in putting plaintiff to work without proper instruction or warning concerning the danger attendant upon the operation of said sawing machine, which negligence of defendant was the proximate cause of plaintiff's injuries; (3) that the defendant was negligent in permitting said woodcutting machine to operate with a saw other and different than a saw regularly and ordinarily used in cutting wood crosswise with a power machine.

For answer, the defendant admitted the ownership and operation of the saw in carrying on his business of farming, the employment of plaintiff, his assistance with the work, and alleged that the injury was due to the negligence of the plaintiff. Further answering, the defendant denied generally the allegations of the petition as amended, and alleged: "that the plaintiff was familiar with and experienced in the operation of said wood-cutting machine; knew the construction and operation of the same and knew or ought to have known of defects, if any, therein; and appreciated any risks and dangers attendant upon the method with which the work was being done and the use of the appliances therefor, but notwithstanding such knowledge, he continued to operate such machine and assumed the risk incident thereto." In his reply, plaintiff denied that he was guilty of contributory negligence, or that he assumed any risk.

A description of the sawing equipment is necessary for a better understanding of the questions involved. It was operated by an ordinary farm tractor. The saw, itself, was 30 inches in diameter, and was fastened at its center to the end of a steel shaft. On the other end of the shaft was a belt wheel. The shaft was fastened to a plank and iron frame, which was bolted to each side of the radiator of the tractor, with the saw perpendicular on the left side of the frame, and just beyond the left side of the radiator. Directly in front of the frame work just described and a part of it, was what is described in the record as the "buck." This consisted of an iron frame in the shape of an inverted capital L, on the top part of which was a wooden platform, which, from the photograph, appears to have been about three feet square. The top of the upright portion of the frame was fastened to the center of the backside of the platform, and two iron braces extended from each front corner, diagonally

down and were bolted at the same place close to the bottom of the upright. The lower end of this upright was so fastened at its stationary foot as to permit the "buck" to be moved backward and forward. When pushed backward or toward the saw, the left side of the platform was parallel to, and about three inches distant from the right surface of the saw. The piece of wood to be sawed was placed on the top of the platform and held in place by a man standing to the left of the saw, and facing it. Another man stood to the right of the saw and held the end of the stick which was to be cut off. The platform was then pushed toward the teeth of the revolving saw, with the desired length projecting to the right of the saw. When the first length was cut off, the platform was tilted forward and the man on the left pushed the stick along the platform and the process was repeated.

There was no hood over the saw, nor guards of any kind about it. The saw was driven by a belt to the drive wheel of the tractor. The plaintiff's job was to stand on the left and feed the piece of wood to the saw. He was familiar with this sawing outfit and with its construction and operation. For three winters just previous, he had been so employed in sawing wood for the defendant with this identical machine. His job, usually, had been in operating the buck by moving the log along the platform and pushing it in to the saw. At one time, he took the outfit to his own home and used it in sawing his wood, without the presence or assistance of the defendant. He estimated that he had assisted in sawing from one hundred to one hundred fifty cords of wood with this outfit. He had never had any difficulty in working about or with it. The record is not very clear as to just how he was hurt. The stick was a small one, four feet long and three or four inches thick. They had sawed off two one-foot lengths, and there remained but half the stick to be cut in two. As he and his coworker at the other end of the stick pushed it against the teeth of the saw, for some unaccountable reason, the stick was thrown up and forward, and his hand struck the saw. It had never happened before. This sawing outfit had been operated in the manner described for twelve years or more.

Plaintiff's testimony as to whether the absence of any

guards protecting the saw had anything to do with his injury is conflicting. While he testified that his injury was not sustained because of the absence of guards, and that the machine was not defective because of such absence, he also testified that the operation of the machine could have been made safe by a hood over the saw, such as another machine in the neighborhood had, or by a brace which he described which would have prevented the wood from clinching on the saw and kicking up, as the stick did which threw his hand into the saw. He also testified that if there had been such a hood or such a brace his hand could not have been thrown against the saw. He testified that during the three years that he used the outfit, he thought that it was reasonably safe and that there was no danger of getting cut on the saw, except that "if a man got foolish around that saw he could, but not by a man operating that saw." Respecting what took place when he was injured, he testified: "Here was a little piece of wood about 4 inches in diameter that suddenly kicked up for some reason; all these years it had never done that; I don't know the reason for it. * * * The saw grabbed the stick, maybe there was a knot there or something, it caught the stick." He was familiar with other wood-sawing machines of the character of this one. He said: "There are three or four machines out there and I worked on all of them." He testified that from his experience and knowledge of these particular machines, and this machine in question, a guard could have been placed on that machine. There was evidence of a sawing machine which had a hood over the saw, and as the wood was pushed against the teeth, it would push up the hood as the saw cut into the wood. As described by the plaintiff: "As the wood is pushed forward it is against the hood and the teeth of the saw. If you had a piece of wood three or four inches in diameter and pushed it into the saw, you would push the wood three or four inches and when the wood is pushed or pulled away from the saw the hood comes right back."

 I. The first ground of negligence alleged in the substituted petition is the failure to have any guards or safety appliances about the saw. This failure, which is conceded, coupled with the affirmative defense that plaintiff knew of their

absence, and was familiar with the construction of the sawing outfit, and its operation, and assumed any risks incident thereto, presents the first question for consideration—that is, whether the court erred in finding there was no fact issue involved therein for the jury.

The determination of this question involves the construction of sections 1487 and 1495 of chapter 73 (Health and Safety Appliances) of the Code of 1939, in effect at the time of the injury. The appellant concedes that the sawing outfit was being used in an agricultural pursuit, and he, therefore, expressly states that, because of the last sentence of section 1487, he makes no claim that under said section the appellee was required by statute to place guards or other safety appliances about the saw. He does contend that it was negligence, as a matter of common law, to not have suitable protection against the hazards of such an implement. He also contends that section 1495 is applicable to the case, and that because thereof the defense of assumption of risk was not available to the appellee, under the circumstances. On the other hand, appellee urges that the two sections should be construed together, and that the last sentence of section 1487 should be construed as applying also to section 1495, and that the latter section has no application to employees and employers engaged in agricultural pursuits. The fact that, in the various codifications, the two sections have always been placed in the same chapters, gives some apparent force to the appellee's position, but after checking the inception and history of these separate enactments, and particularly Code Commissioners' Bill No. 43, otherwise known as Senate File 43 of the Fortieth General Assembly, Extra Session, we are convinced that the appellee is in error in his contention.

Section 1487 is as follows: ''Safety appliances. It shall be the duty of the owner, agent, superintendent, or other person in charge of any workshop, manufacturing or other industrial establishment or concern operated by machinery, either in a fixed location or when portable and moved from place to place therein in carrying on such industry, so far as practicable, to install and keep in order belt shifters or other safe mechanical means for throwing belts on and off pulleys, install loose pulleys, and protect, by guards or housing, all gearing, cogs, belting, shafting,

772

tumbling rods, universal or knuckle joints, set screws, saws, planes, and other machinery, when so located or used that employees may receive injury thereby. *The provisions of this chapter shall not apply to agricultural pursuits.*'' (Italics ours.) It was originally section 2 of chapter 149 of the Acts of the Twenty-ninth General Assembly, approved April 11, 1902, and became section 4999-b of the 1902 Supplement to the Code of 1897, and section 4999-a2 of the 1907 and 1913 Supplements to said Code, and was included, with other provisions, in section 860 of Compiled Code of 1919, and the 1921 and 1923 Supplements thereto.

Section 1495 is as follows: ''Assumption of risks. In all cases where the property, works, machinery, or appliances of an employer are defective or out of repair, and where it is the duty of the employer from the character of the place, work, machinery, or appliances to furnish reasonably safe machinery, appliances, or place to work, the employee shall not be deemed to have assumed the risk, by continuing in the prosecution of the work, growing out of any defect as aforesaid, of which the employee may have had knowledge when the employer had knowledge of such defect, except when in the usual and ordinary course of his employment it is the duty of such employee to make the repairs, or remedy the defects. Nor shall the employee under such conditions be deemed to have waived the negligence, if any, unless the danger be imminent and to such extent that a reasonably prudent person would not have continued in the prosecution of the work; but this statute shall not be construed so as to include such risks as are incident to the employment; and no contract which restricts liability hereunder shall be legal or binding.'' It was originally chapter 181 of the Acts of the Thirty-second General Assembly, entitled ''Assumption of Risk'' and ''An Act defining the relations between employer and employee with respect to assumption of risk, and providing what shall constitute notice thereof.'' The notation in brackets as it appears in the title in chapter 181 of the bound volume of the Acts of the Thirty-second General Assembly, that the enactment was additional to the law as it appeared in section 4999-b of the 1902 Supplement to the Code of 1897, was not a part of the Act as passed and approved. Chapter 181 was approved March 28;

1907, and became section 4999-a3 of the 1907 Supplement. This section was repealed by Chapter 219 of the Laws of the Thirty-third General Assembly, and was enacted substantially as it now appears in section 1495, and appeared as section 4999-a3 of the 1913 Supplement to the Code of 1897, and as section 863 of the Compiled Code of 1919 and its Supplements.

In the 1924 codification, at the Fortieth General Assembly, Extra Session, the Code Commissioners' Bill No. 43, respecting "Health and Safety Appliances" was prepared. It recited: "The general purpose of this bill is to gather together in one chapter the widely separated provisions of law germane to the subject. There is no proposal to change the law, except to broaden some of the provisions of S. C. C. 860 (Supplement to Compiled Code) so as to apply to portable concerns operated by machinery, such as ditching machines, shredders, saw mills, threshing machines, and the like." This Code Commissioners' Bill became Senate File 43, chapter 4, Health and Safety Appliances, an act to codify sections 859, 861, 862 and 883 of the Compiled Code, and section 860 of the Supplement to said Code, relating to health and safety appliances and industrial accidents. It will be noted that it did not include section 863 of the Compiled Code pertaining to assumption of risk. It was duly enacted, and approved March 17, 1924. In section 6 of that act, the last sentence of section 1487 of the 1924 and all subsequent Codes, first appeared. In fact, section 6 thereof was identical with said Code section 1487.

There is nothing, in the language of section 1495, or elsewhere in the Code, which excepts those engaged in farming or agricultural pursuits from its provisions, and, if the affirmative defense of assumption of risk is available to an employer, so engaged, it is available only as provided in said section. The plaintiff in this case was under no duty or obligation as a part of his work to remedy, by repair or by adding equipment, any defects in the construction or operation of the sawing outfit. The defendant knew that there were no guards or safety appliances about the saw. If they were needed to make the operation of the machine reasonably safe, it was his duty to furnish them. It is true that he had not promised to supply them. Under section 1495, the plaintiff was permitted to perform his duties about the

machine, without being deemed to have assumed the risk growing out of such defects, nor to have waived any negligence, unless the danger arising therefrom was imminent to such an extent that a reasonably prudent person would not have continued with the work. Under the record made and under the decisions of this court, it is our judgment that the issue of whether the plaintiff had assumed the risk of any danger because of defects in the sawing outfit, or of negligence on the part of defendant, was an issue for the jury and not for the court. In Bell v. Brown, 214 Iowa 370, 239 N. W. 785, the plaintiff, as an employee of defendant, was operating a tractor with a defective improvised arrangement to throw the clutch, which was also defective. He was engaged in pulling a binder during harvest. The court held that it was the duty of the defendant to furnish the plaintiff-employee with reasonably safe machinery with which to do the work, and also that under the provisions of Code section 1495, the question of assumption of risk was for the jury. Both of them knew of the defects in the equipment.

In Oestereich v. Leslie, 212 Iowa 105, 234 N. W. 229, the plaintiff, as an employee of defendant, was using a tractor, with a defective clutch, in plowing. The defendant knew of the defect and had promised to repair it. This court cited section 1495 in support of its holding that the question of assumption of risk was one for the jury. In both the Oestereich case and the Bell case, supra, the fact is mentioned of a promise to repair. This was apparently mentioned to call attention to the fact that the employer had knowledge of the defect. Under section 1495, a promise to repair is not necessary in order to deprive the employer of the defense of assumption of risk. For a full discussion of Code sections 1487 and 1495, see Correll v. Williams & Hunting Co., infra (173 Iowa 571, 155 N. W. 982, Ann. Cas. 1918A, 117). While that was a case under the first-mentioned section, what is said under section 1495 is applicable here. See also Nodland v. Kreutzer & Wasem, 184 Iowa 476, 168 N. W. 889; Petersen v. McCarthy Improvement Co., 175 Iowa 85, 156 N. W. 801. We think the case of Degner v. Anderson, 213 Iowa 588, 239 N. W. 790, is distinguishable on the facts. In that case, the defendant knew nothing about the defect. The decision in Sutton v. Bakery Co., 135 Iowa 390, 112 N. W. 836, is not controlling in

this case. Much of what the court therein says of contributory negligence has been nullified by Code section 11210, hereinafter referred to.

We cannot say, as a matter of law, that the danger was so imminent that a reasonably prudent person would not have continued in the work.

II. Does the fact that by the terms of Code section 1487 there was no statutory requirement upon the defendant to protect the saw by guards or housing, relieve him of his common-law obligation to furnish the plaintiff with a reasonably safe instrumentality with which to work? Our answer must be that he was not so relieved. By the express exemption stated in the section, the failure to have such guards or housing absolved him only from negligence as a matter of law (Correll v. Williams & Hunting Co., 173 Iowa 571, 155 N. W. 982, Ann. Cas. 1918A, 117; Obenchain v. Harris & Cole Brothers, 148 Iowa 86, 126 N. W. 960; O'Connell v. Smith & Son, 141 Iowa 1, 118 N. W. 266), but it did not absolve him from negligence in fact, if the guards or housing were necessary to make the instrumentality reasonably safe. As we have repeatedly held, it is the duty of the defendant-employer to furnish reasonably safe instrumentalities to an employee. See Bell v. Brown, and Oestereich v. Leslie, supra.

III. The defense of contributory negligence, pleaded by the defendant, could not defeat the plaintiff's action, since it was not a complete defense, but may be pleaded only in mitigation of damages. Code section 11210. Bell v. Brown, supra; Oestereich v. Leslie, supra; Potier v. Winifred Coal Co., 192 Iowa 1280, 184 N. W. 739; Hunt v. Des Moines City Ry., 188 Iowa 1068, 177 N. W. 48.

The decision is not an easy one. But we are bound to view the record in the light most favorable to appellant, and to credit him with all inferences that may be reasonably drawn therefrom. Reasonable minds might differ on the question. Plaintiff received a crippling injury. In the interest of justice, we think a jury should pass upon the claims of each party.

We have considered appellee's motion to dismiss the appeal, but it is our judgment that there has been a substantial compliance with Rule 30 of this court. For the reasons stated,

the trial court was in error in sustaining defendant's motion to direct a verdict in his favor, and the judgment is therefore reversed.—Reversed.

STIGER, HALE, and OLIVER, JJ., concur.

SAGER, J., concurs in the result.

RICHARDS, C. J., and HAMILTON, J., dissent.