MARVIN PRICE, Appellee, v. ORVILLE MCNEILL et al., Appellants.

No. 46868.

OCTOBER 15, 1946.

Prichard & Prichard and John D. Beardsley, all of Onawa, and Neal A. McNeill, of Tulsa, Oklahoma, for appellants.

William P. Welch, of Logan, and Underhill & Underhill, of Onawa, for appellee.

MULRONEY, J.—Marvin Price, a farmer about forty years old, worked for the defendants on their farm during the year 1944 at a salary of $100 a month, plus other consideration to be furnished by defendants. On December 2d of that year, while operating a John Deere tractor and ensilage cutter, he suffered injuries resulting in the loss of his left arm. He brought suit against the defendants alleging negligence on their part:

''[1] in directing and requiring the plaintiff to operate the John Deere Tractor at a time when the clutch thereon was defective and improperly working, and unsafe for the plaintiff to operate, which fact was well known to the defendants * * * [2] in directing and requiring the plaintiff to operate the tractor and ensilage cutter with a tumbling rod that was not equipped with a guard or shield over the knuckle * * *

which fact was well known to the defendants * * * [3] in directing and requiring the plaintiff to operate said tractor and ensilage cutter equipped with a tumbling rod that had two bolts therein, directly behind the knuckle below the driver's seat on the tractor, which extended from said rod a distance of 1½ inches more than was necessary or usually and ordinarily used; all of which facts were well known to the defendants.''

 The petition alleged that defendants' negligence was the proximate cause of his injury and sought judgment against the defendants for $40,000. The jury returned a verdict for $6,000 and defendants appeal alleging the trial court erred:

''(a) in not sustaining defendants' motion for directed verdict at the close of plaintiff's evidence; (b) in not sustaining defendants' motion for directed verdict at the close of all the evidence; (c) in not entering judgment for the defendants notwithstanding the verdict and in refusing to grant defendants a new trial; and (d) in not reducing the verdict.''

This is not a proper assignment of error. It is much too vague to warrant our consideration of each and every ground contained in the motions that were not sustained. Hawkins v. Burton, 225 Iowa 707, 281 N. W. 342. Defendants' brief is in two divisions and in the first division defendants specify that the motions should all have been sustained because (1) ''the plaintiff's evidence shows that the acts of the plaintiff himself were the proximate cause of his injury'' and (2) ''under the record made by the plaintiff, he assumed the risk incident to the operation of the machinery in question, as a matter of law.'' The other division deals with the question of the amount of the verdict.

We will proceed to discuss the two grounds in Division I of defendants' brief which are the only two reasons they argue why their motions in assignments of error d, b, and c should have been sustained. An abbreviated statement of the facts will suffice. The evidence favorable to the plaintiff showed that on December 4th the plaintiff and a fellow worker named

Kettleson were ordered by one of the McNeills to go to a corn-field and cut ensilage; that they were ordered to hitch the ensilage cutter to a John Deere tractor. There is a power hook-up on the tractor directly under the driver's seat and when plaintiff attempted to hook up the cutter to the tractor power hook-up he could not find all the necessary parts. Harold McNeill was called and he brought the attachment, consisting of a stub shaft and knuckle, to the cornfield. The plaintiff's testimony is that the stub shaft and knuckle were connected with the protruding bolts of about an inch and a half at the time Harold McNeill brought them out to the field. Plaintiff testified that he told Harold McNeill that he did not like to drive the John Deere tractor as he was unfamiliar with it and he understood from Kettleson and others who had driven it that it was in no shape for a man to operate, and he asked where the guards were as he could not find them in the barn or the machine shop and they ought to be on there, and he called Harold's attention to the two long bolts. He testified Harold replied that they only had to get two loads of ensilage for over Sunday, that it was no use hooking up "all that stuff" just for that, and to go ahead and in a few days when the work was completed they could repair the machinery.

The evidence shows that when plaintiff and Kettleson attempted to operate the tractor and cutter it clogged up several times and they had to stop and pull the stalks out of the cutter. The clutch on the tractor regulated the power that operated the cutter so when the clutch lever was pushed ahead the cutter operated from the tractor power and when the clutch lever was pulled back the cutter would not operate. The plaintiff attempted to clean out the cutter by engaging the clutch with the tractor out of gear. His effort failed and he testified he pulled the clutch lever back, shutting off the power in the cutter, and started to get down from the tractor. He stated he had just about touched the ground when the clutch started to take hold again; that he grabbed for the clutch lever but at that moment a long sheep-lined coat he was wearing caught in the whirling long bolts of the knuckle joint, and he was thrown to the ground. He threw his arms

out to protect himself and his left arm, in some way, was severed near the shoulder so that it was only hanging by a cord. Plaintiff's story was corroborated by Kettleson and there was evidence that tractors were not usually operated with the power take-off engaged without a shield over the power take-off. In fact, Harold McNeill testified: "I know that every universal joint that hooks into the power takeoff shaft is supposed to have a shield if one is available." And there was evidence that tractors come equipped with such shields.

I. Defendants argue that the above record of plaintiff's evidence shows that his acts were the proximate cause of his injury. We fail to follow the argument. Defendants state that the long bolts that caught plaintiff's coat were the proximate cause of the injury—not the absence of the shield and not the "grabby clutch." The obvious answer is that the proximate cause was for the jury. Bell v. Brown, 214 Iowa 370, 239 N. W. 785, and cases cited. But what "acts of the plaintiff" could be held to be the proximate cause? The placing of the long bolts in the knuckle joint, which long bolts, under the defendants' argument, were the proximate cause, were the acts of defendants. The argument advanced by defendants that plaintiff could have taken the connection back to the machine shop, put it in a vise, and there sawed off the long bolts is meaningless. Without further pursuing the subject, we hold the question of proximate cause was for the jury.

II. The argument that plaintiff assumed the risk incident to the operation of the machinery in question as a matter of law is foreclosed by what we said in Oestereich v. Leslie, 212 Iowa 105, 112, 234 N. W. 229, 232, and Bell v. Brown, supra, 214 Iowa 370, 239 N. W. 785. The following pertinent quotation from the Oestereich case is applicable here:

"Relative to appellant's contention that appellee assumed the risk arising out of the defective condition of the clutch, it is to be noted from the testimony hereinbefore set out, that, after the attempt on Sunday to repair the same by putting in of the clutch plate or disc, and before the plowing on Friday, the day of the accident, the appellant was fully informed and

knew that the defective condition had not been remedied, and that the appellant promised to have the necessary repairs made thereon and directed the appellee to proceed with the tractor in the performance of the work. Under such circumstances, an employee, relying on the promise, may continue the use of the defective instrumentality for a reasonable time after the making of the promise without assuming the risk, unless the danger be so imminent that a reasonably careful and prudent person would not continue in the prosecution of the work; and as to what is a reasonable time in which the employee may continue. the use of the defective machinery after promise of repair by the employer is ordinarily a question for the jury.''

The defendants had the burden of establishing this defense. It was certainly not established as a matter of law. It was submitted to the jury under proper instructions that were not excepted to. There was no error in such submission.

III. The motion for new trial and for judgment notwithstanding verdict contains one ground (No. 3): ''That the damages were excessive and were influenced by passion and prejudice on the part of the jury.'' But the argument in Division II of defendants' brief, under the fourth assignment of the error that the trial court erred ''in not reducing the amount of the verdict,'' is not based on any passion or prejudice engendered in the jury. The argument is that ''plaintiff's evidence shows as a matter of law that he was guilty of contributory negligence, which would go to the mitigation of damages, and the verdict and judgment are excessive for that reason'' and that the amount payable under the workmen's-compensation act would be the proper measure of damages. Certain it is the defense of contributory negligence could not defeat plaintiff's action. Lang v. Hedrick, 229 Iowa 766, 295 N. W. 107. The jury was instructed that they could diminish the damages if they found the plaintiff guilty of contributory negligence. Upon this appeal we could not lessen the recovery by first holding contributory negligence established as a matter of law and then assume that the jury did not mitigate by their award.

The statutes governing the award under workmen's-compensation cases have no application. For the reasons stated, the judgment is affirmed.—Affirmed.

GARFIELD, C. J., and OLIVER, HALE, BLISS, WENNERSTRUM, SMITH, and MANTZ, JJ., concur.

HAYS, J., takes no part.